## MEYER, JR. v PARR

Ohio Appeals, 1st Dist, Hamilton Co

No 5960. Decided June 9, 1941

George A. Lutz, Cincinnati, for appellant.

Cors, Scherer & Hair, Cincinnati, for appellee.

**OPINION**

By MATTHEWS. PJ.

The trial court sustained a general demurrer to the petition and the plaintiff not desiring to plead further, judgment was rendered for the defendant, dismissing the action at the plaintiff's costs. This appeal is from that judgment.

The plaintiff alleged in his petition that he was engaged in the business of a funeral director and embalmer, and that the defendant well knowing that fact and maliciously intending to injure him in his reputation and business wrote and filed certain letters and affidavits with the Ohio State Board of Embalmers containing the false, malicious and defamatory charge that the plaintiff had solicited the funeral of one Dorothy Parr Brigmon, the defendant's deceased daughter, that he had refused to relinquish her body to the defendant or her family, that the defendant informed the plaintiff that another funeral director had been employed and that the plaintiff states that he had embalmed the body and that he was going to conduct the funeral, that the plaintiff caused a death notice to be published in a newspaper stating that the funeral would take place at the plaintiff's place of business and that the plaintiff only released the body when the defendant had secured another statement and an affidavit from the husband discharging the plaintiff and releasing the body, and that as a result the defendant. who was decedent's father had been pre-vented from seeing the body for two days, and that great and unfavorable publicity resulted.

The plaintiff alleged that the defendant intended and did thereby charge the plaintiff with improper solicitation of business, that he did not conduct his business in a respectable manner and would not conduct a funeral in a respectable manner, with seeking unfavorable publicity, with unlawfully holding the body of Dorothy Parr Brigmon, and that the defendant intended thereby to bring the plaintiff into public disgrace, shame, and disrepute and to injure him in his profession and to cause the Ohio State Board of Embalmers and Funeral Directors in institute an action to revoke the plaintiff's license.

There is no allegation in the petition that any proceeding was instituted by or before the Ohio State Board of Embalmers and Funeral Directors. As noted, there is a reference to the filing of the letters and an affidavit with that board, but there are other allegations that would warrant the construction that certain of these statements were made elsewhere and to others. However, it was assumed in the trial court and in argument and briefs in this court that the only communication made by the defendant was to the Ohio State Board of Embalmers and Funeral Directors through the medium of letters and an affidavit. In view of the conclusion to which we have come, we will not do more than suggest that the allegations may be susceptible of a broader construction, as no matter whether the assumed construction or a broader one were found correct, our decision would be the same.

The trial court reached the conclusion that the petition showed that these communications were made to the Ohio State Board of Embalmers and Funeral Directors, and that they were absolutely privileged and that, therefore, the petition failed to state a cause of action. The issue between the contestants on this appeal is as to the extent of the privilege the appellant contending for a conditional privilege that would be destroyed by the existence of

actual malice and the appellee contending for an absolute privilege, upon which actual malice would have no effect.

The trial court analyzed the statutes creating the Ohio State Board of Embalmers and Funeral Directors and conferring power upon it and concluded that: "It is plainly apparent that in addition to the administrative duties of the Board, its proceedings and functions are largely judicial to the same extent as are proceedings in the constituted courts of justice of this state." Having reached this conclusion he logically placed statements made in such proceedings in the same category as statements made by litigants and witnesses in the course of judicial proceedings, and accorded them absolute privilege.

It should be observed here that power to interpret and apply the law in cases and controversies—that power described as judicial—can only be exercised by tribunals created by or in accordance with the provisions of **Art. IV of the Ohio Constitution.** The tribunals are called courts and the administrators of this power are called judges, but whether they are so designated, the power must be exercised by officials elected by the votes of the electors of the respective districts served by them. **§10, Art. IV.** This power cannot be conferred upon a tribunal of appointed officials. **State v Hutzinpiller, 112 Oh St 468.**

To so construe these statutes as to confer judicial power upon this board would seem to bring them in collision with **Art. IV, §10 of the Constitution.** Invalidating the statute would not strengthen the position of the demurrant.

Examining these statutes, we find that by §1335-3 GC, the Board is given power to adopt and enforce rules for the transaction of its business, the betterment and promotion of the educational standards of the profession of embalming, and the standards of service in the profession of embalming and funeral directing. It authorizes the appointment by the Board of an agent to be known as an inspector who is authorized to serve any process issued "by any court under the provisions of this act and to serve and execute any papers or process issued by the Board." It empowers the Board to fix the qualifications that must be possessed in order to secure a license as an embalmer or funeral director and authorizes the Board or its members to issue subpoenas requiring persons to attend hearings of the Board.

Sec. 1335-4 GC, requires the Board to hold one meeting annually for the purpose of examining applicants for licenses and to publish notice thereof.

Sec. 1335-6 GC, provides for application for and issuance of licenses, etc.

By §1335-7 GC, it is enacted that: "The board may refuse to grant, may suspend, or may revoke any license granted to a person" for specified reasons, but provides that such suspension, revocation or cancellation shall not be made until the accused has been furnished with a statement of the charges and an opportunity to be heard after 30 days notice of the time and place of the hearing. A record is required to be kept and any person who has been refused a license or whose license has been revoked or suspended may within 30 days "prosecute error therefrom to the Common Pleas Court of the county within which such person whose application has been refused —and such Common Pleas Court shall be limited in its proceedings therein to a determination as to whether the action of the board was in accord or consistent with this act or the constitution of this state, or was arbitrary **or** an abuse of discretion."

It is expressly provided that the judgment of the Common Pleas Court may be reviewed upon proceedings in error by the Court of Appeals.

It was from these provisions that the trial court reached the conclusion that this board was exercising judicial power. In this, we believe the court erred.

Powers of this sort have been conferred upon boards and commissions from the beginning. The power to investigate, to subpoena, to hear and de-

cide is not a peculiar attribute of the judicial department. Each department within its sphere has such power. So far as we know it has never been held that the possession of this power, ipso facto, transmuted an administrative agency into a judicial tribunal.

As we view these statutes they establish a general standard of conduct for the regulation of those engaged in the business of embalming and funeral directing and creates a board to administer the law with power to make rules and regulations in conformity to the general standard. There is no provision anywhere in these statutes for the filing of a complaint by a private person with the board against an applicant for or the holder of a license, although it would beyond doubt be within the right and the duty of such person to acquaint the board with any matter affecting the qualification of an applicant for or the holder of a license, but, of course, no right or duty exists to attempt to mislead the board by false and malicious statements.

This is an administrative board—a part of the executive department—engaged in executing or enforcing the law. The hearing which it gives is for the sole purpose of ascertaining information in the light of which it can intelligently and judiciously enforce the rule of the statute. This ▮▮▮▮▮▮▮▮ is not an exercise of judicial power. It is an exercise of that circumpection and sound discretion that should characterize the conduct of every official whether judicial, executive, or legislative.

But it is said that this statute recognizes that this board exercises judicial powers, because provision is made for a review of its action by a proceeding in error to the Common Pleas Court. In reality all the statute does is to recognize that under the due process clauses of the state and federal constitutions it is not possible to confer absolute power upon executive or administrative officers. It is a part of the judicial power to interpret statutes conferring executive power upon offi-

cers and determine whether such officers have complied with the law in a given case—and that is the extent of the judicial review provided by this statute. On the proceeding in error the review is expressly limited by this statute to an inquiry as to whether the board has acted in accord or consistently with the law or the constitution, or was arbitrary, or whether there was an abuse of discretion. If the board's action was arbitrary, or if it abused its discretion, it was not following the law, because it is implied in every law conferring power that it will be exercised judiciously with an honest intent to fulfill the purpose of the law. The due process clauses require that and it is a part of the judicial function to see that the requirement is met. The judicial review provided by §1335-7 GC, hews "to the constitutional minimum below which judicial control of administrative action may not be pushed by statutory provisions". Stason's Cases on Administrative Tribunals, 586. And if no provision is made for this constitutional minimum of judicial review in the statute, it may be invoked by common law methods, such as, mandamus, prohibition, certiorari, etc., or by collateral attack in an action for damages, for injunction, or by way of defense to an action based on the administrative finding. Id. 498, et seq.

So we conclude that there is nothing in the statute indicating a legislative intent to confer judicial ▮▮▮▮▮▮▮▮ power upon this board, and that the proceedings before it cannot be placed in the category of judicial proceedings, the participants in which are protected by an absolute exemption from liability based on communications therein relevant to the inquiry.

But it is urged that if the law has not thus far extended the mantle of absolute privilege to persons invoking the action of administrative tribunals, it should now do so because of the enormous growth of bureaucratic government within the last quarter of a century. As a matter of policy, it would seem debatable whether this growth

would dictate shielding those invoking the exercise of this great power through motives of malice and bad faith, and not in the public interest. It should be kept in mind that we are considering here the case of a volunteer informer who is accused of venting his malice under the guise of protecting the public. We are not considering the case of the administrative officers. There is a difference which excludes them from this category and we are not required to consider the extent of their protection for acts performed by them under color of office.

The judicial department is not the policy making branch of the government, and is not at liberty to usurp the function of that department. If an absolute privilege is to be extended to one invoking the jurisdiction of an administrative agency, it should be extended by the General Assembly.

Now what is the established rule applicable to the pleaded facts?

This whole subject of defenses to actions for defamation is condensed into a classification based on rules setting forth fundamental principles in Chapter 25 of the Restatement of the Law of Torts. The principle that rules this case is stated in §598 at pages 260 and 261 of Volume III as follows:

"An occasion is conditionally priviledged when the circumstances induce a correct or reasonable belief that

(a) facts exist which affect a sufficiently important public interest, and

(b) the public interest requires the communication of the defamatory matter to a public officer or private citizen and that such person is authorized or privileged to act if the defamatory matter is true."

And section 603 at pages 268 and 269 of the same volume:

"One who upon a conditionally priviledged occasion publishes false and defamatory matter of another abuses the occasion if he does not act for the purpose of protecting the particular interest for the protection of which the privilege is given."

In other words, as shown by the note under the section, if the statement is made from spite or ill-will it is an abuse and not a use of the privilege.

In Andrews v Gardiner, 224 N. Y. 440, 121 N. E. 341, 2 A. L. R. 1371, the court held that allegations made by an attorney on behalf of his client in an application for a pardon were only prima facie privileged and existence of malice destroyed the privilege.

A petition to a village council to revoke a business license is only conditionally privileged. McKee v Hughes, 133 Tenn. 455, 181 S. W. 930, L. R. A. 1916 D 391.

In Patterson v Kincade, 44 Oh Ap 154, the court held that a communication to a board of school examiners concerning a teacher to induce the revocation of the teacher's certificate was not absolutely privileged and that a liability was created by a false and malicious statement.

Counsel relies upon Taplin-Rice-Clerkin Co. v Hower, 124 Oh St 123, Wilson v Whitacre, 4 C. C. 15, and Pruesser v Paulhaber, 15 C. C. (n.s.) 110, as supporting his advocacy of absolute privilege. We think the cases are distinguishable and inapplicable. The first case was an action for malicious prosecution and presented the sole question of the admissibility of evidence as to what had transpired in the grand jury room. It was not an action of libel in which was raised the question of absolute or conditional exemption from liability because of the occasion, and, furthermore, had it been, the occasion was clearly a judicial proceeding. The other two cases indisputably related to proceedings before courts in the strictest sense of that term—the one relating to the admission of an attorney to the bar and the other relating to disbarment proceedings.

We are of the opinion that according to the greater weight of authority as well as the sounder reasons a person who voluntarily and on his own initiative, through spite or ill-will, and

not to serve any public interest, makes a false charge, is not protected against liability because the communication is made to the Ohio State Board of Embalmers and Funeral Directors.

For these reasons, the judgment is reversed and the cause remanded for further proceedings according to law.

ROSS & HAMILTON, JJ., concur.