ROSS et al., Appellants,

v.

STRASSER et al.; Rollerblade, Inc. et al., Appellees.

[Cite as *Ross v. Strasser* (1996), 116 Ohio App.3d 662.]

Court of Appeals of Ohio,
Second District, Montgomery County.

No. 15929.

Decided Dec. 20, 1996.

*A. Mark Segreti, Jr.,* for appellant.

*Susan M. Silberbusch* and *Michael D. Fitzpatrick,* for appellee Thomas Davis, d.b.a. Out–N–About Sports, Inc.

*Thomas R. Schoenfeld* and *Dennis R. Lapp,* for appellee Rollerblade, Inc.

BROGAN, Presiding Judge.

Appellant Constance L. Ross appeals from the Montgomery County Common Pleas Court's judgment entry granting the appellees' motion for summary judgment.

Ross advances three assignments of error. First, she contends that the trial court erred by finding the appellees immune from liability pursuant to Ohio's "recreational user" statute. Next, she claims that the trial court erred by finding appellee Rollerblade, Inc. immune from liability as a result of a waiver and release form she had signed. Finally, Ross argues that the trial court erred by finding no genuine issue of material fact concerning willful or wanton misconduct by the appellees.

Ross's appeal stems from an injury she sustained while in-line skating at Lincoln Park in Kettering, Ohio. Ross incurred the injury while participating in an event promoting Rollerblade brand in-line skating equipment. The event, which took place in a parking lot, was a joint promotion sponsored by Rollerblade, Inc., and Out–N–About Sports, a local retail sales outlet for Rollerblade skating equipment. Thomas J. Davis, who operated Out–N–About Sports, secured a location for the demonstration and provided a PA system, tables, chairs, and ropes to mark the skating area. Rollerblade, Inc., provided a "demo van" full of in-line skates and safety equipment. Rollerblade, Inc., also supplied a van driver, who was an experienced skater. The event was designed to promote in-line skating and to allow the public to try Rollerblade equipment.

On September 5, 1993, Ross and her son attended the skating promotion, along with other members of the general public, without paying a fee or other consideration. Prior to receiving skating equipment, Ross and other participants

signed a release and waiver. Among other things, the form released "Rollerblade, Inc., and its employees from any liability, claim or suit arising out of [Ross's] use of the skates."

Ross subsequently proceeded onto the parking lot, where she first skated with her son and his friends. Ross and the other participants received limited supervision and were told only to skate in a counter-clockwise direction. After skating with her son, Ross attempted to complete a circuit around the parking lot alone. Before completing one lap on her own, however, Ross and another skater, Donald A. Strasser, collided. In deposition testimony, Ross and Strasser disputed how the collision occurred and who was at fault. In any event, Ross fell as a result of the collision and broke her arm near the elbow.

Following her injury, Ross filed a lawsuit on September 2, 1994, against Strasser, Thomas J. Davis, d.b.a. Out–N–About Sports, and Rollerblade, Inc., seeking compensatory and punitive damages. Thereafter, Davis and Rollerblade, Inc., moved for summary judgment. The two defendants argued that Ohio's "recreational user" statute, R.C. 1533.181, granted them immunity from liability. Additionally, Rollerblade, Inc., contended that Ross's pre-participation waiver and release exculpated it from liability for her injury. The trial court subsequently agreed, finding Davis and Rollerblade, Inc., immune from liability pursuant to R.C. 1533.181 and finding the waiver and release valid. Consequently, the trial court granted summary judgment in the two defendants' favor. Ross later settled her claim against defendant Strasser, and on May 14, 1996, the trial court dismissed him as a party to the action. On that date, the court also issued a termination entry declaring its earlier grant of summary judgment final and appealable. Ross then filed a timely notice of appeal on May 24, 1996, challenging the trial court's summary judgment ruling. She raises three assignments of error.

In her first assignment of error, Ross contends that the trial court erred by finding Davis and Rollerblade, Inc., immune from liability pursuant to R.C. 1533.181, Ohio's "recreational user" statute. Specifically, she claims that the trial court erred by assuming that the Lincoln Park parking lot in question constituted public recreational property. To the contrary, she argues that the record depicts "a private parking lot in a commercial development on a street in Kettering, Ohio, merely known as 'Lincoln Park.'"

Ross also argues that the demonstration area's "essential character" was not property available to the general public for recreational use without payment of a fee. Instead, she contends that on the date in question, the appellees merely converted a roped-off portion of the private parking lot into an area where Rollerblade equipment was exhibited. Ross also insists that "the essential character of a parking lot is not for recreational use for the general public. A

parking lot is used for parking cars for customers and employees of the business community in the Lincoln Park business development." Citing *Miller v. Dayton* (1989), 42 Ohio St.3d 113, 537 N.E.2d 1294. Ross then reasons that "[i]t is only when the property is held open to the public for recreational purposes that the statute applies."

We begin our resolution of Ross's assignment of error with a review of R.C. 1533.181. That provision provides:

"(A) No owner, lessee, or occupant of premises:

"(1) Owes any duty to a recreational user to keep the premises safe for entry or use;

"(2) Extends any assurance to a recreational user, through the act of giving permission, that the premises are safe for entry or use;

"(3) Assumes responsibility for or incurs liability for any injury to person or property caused by any act of a recreational user."

Furthermore, "premises" and "recreational user" are defined in R.C. 1533.18:

"(A) 'Premises' means all privately-owned lands, ways, waters, and any buildings and structures thereon, and all state-owned lands, ways and waters leased to a private person, firm, organization, or corporation, including any buildings and structures thereon.

"(B) 'Recreational user' means a person to whom permission has been granted, without the payment of a fee or consideration to the owner, lessee, or occupant of premises, other than a fee or consideration paid to the state or any agency thereof, to enter upon premises to hunt, fish, trap, camp, hike, swim, or engage in other recreational pursuits."

In *Miller, supra,* the Ohio Supreme Court concluded that when "determining whether a person is a recreational user under R.C. 1533.18(B), the analysis should focus on the character of the property upon which the injury occurs and the type of activities for which the property is held open to the public." *Id.* at paragraph one of the syllabus. The *Miller* court also explained that "the inquiry should focus on the nature and scope of activity for which the premises are held open to the public. The goal is to determine the character of the premises." *Id.* at 115, 537 N.E.2d at 1296. Similarly, in *Reed v. Miamisburg* (1993), 96 Ohio App.3d 268, 270, 644 N.E.2d 1094, 1095, this court recognized that when determining whether a party is immune from liability, "we must focus on the character of the property upon which the injury occurred and the types of activities for which the property was held open to the public."

In its September 29, 1995 decision and order, the trial court relied largely upon *Miller* and a second case, *Loyer v. Buchholz* (1988), 38 Ohio St.3d 65, 526 N.E.2d

300, to hold the appellees immune from liability pursuant to R.C. 1533.181. In support of its ruling, the trial court first cited *Loyer*, which held that public parks are "entitled to the immunity conferred by R.C. 1533.181 * * * provided that the land is held open to the general public without the payment of a fee, and the injury results from a recreational pursuit within the meaning of R.C. 1533.18(B)." *Loyer, supra*, 38 Ohio St.3d at 67, 526 N.E.2d at 303. The trial court then deemed Lincoln Park a "public park" and concluded that on the day in question, its parking lot was transformed into an in-line skating rink for the two-day demonstration. The trial court also determined that the appellees were "occupants" of the parking lot within the meaning of the statute. Additionally, the court found that Ross was a "recreational user" and that in-line skating constituted "other recreational activity" pursuant to R.C. 1533.18(B).

Following the trial court's ruling, Ross filed a motion for reconsideration, contending that the record did not support finding Lincoln Park a "public park" or finding the property "held open to the public for recreational use." The trial court subsequently overruled Ross's motion in a November 28, 1995 decision and order, stating:

"In determining that Lincoln Park was a public park afforded the protection of R.C. 1533.181, the court relied on *Loyer v. Buchholz* (1988), 38 Ohio St.3d 65, 67 [526 N.E.2d 300, 302–303]. Obviously, the court's use of the term 'public park' has caused the parties some consternation, so the court will clarify its wording in the September 29, 1995 Decision. Regardless of whether Lincoln Park is a 'public park' as described by the Supreme Court of Ohio in *Loyer v. Buchholz* (1988), 38 Ohio St.3d 65 [526 N.E.2d 300], or 'privately-owned land' as stated in the Revised Code itself, the court finds Lincoln Park to fall within the immunity provided by R.C. 1533.181. The parking lot was roped off and designated as an area to rollerblade on the date in question. The rollerblading demonstration was free of charge and was held open to the general public. These facts place it within the protection of R.C. 1533.181. Accordingly, Plaintiff's Motion for Reconsideration based on the recreational user statute is not well-taken and is hereby OVERRULED."

After reviewing the record and relevant case law, we find that the trial court's reasoning is persuasive. Regardless of whether the Lincoln Park area and the parking lot constituted public land or private land, the recreational user statute remains applicable. "Although the statute, pursuant to R.C. 1533.18, seemingly applies only to privately held land, the statute has been interpreted to include lands owned by states and municipalities." *Opheim v. Lorain* (1994), 94 Ohio App.3d 344, 347, at footnote 3, 640 N.E.2d 897, 899, at footnote 3, citing *McCord v. Div. of Parks & Recreation* (1978), 54 Ohio St.2d 72, 8 O.O.3d 77, 375 N.E.2d 50.

Furthermore, as the trial court recognized, at least on the date in question the "essential character" of the demonstration area was "that of premises held open to the plaintiff, without fee, for recreational purposes." *Miller, supra,* 42 Ohio St.3d at 115, 537 N.E.2d at 1297. Specifically, the appellees held out the roped-off area as a makeshift skating rink for any members of the public who wish to participate.[1] Moreover, as the *Miller* court explained, "the presence of man-made improvements on a property does not remove the property from statutory protection." *Id.* at 114, 537 N.E.2d at 1296.

Next, we find the type of activity for which the property was held open to the public to fall within the "other recreational pursuits" language of R.C. 1533.18(B). In *Miller,* the Ohio Supreme Court acknowledged that "[t]he phrase 'other recreational pursuits' has been broadly construed by this court and the courts of appeals * * *." *Id.* at 115, 537 N.E.2d at 1296. Similarly, in *Opheim, supra,* 94 Ohio App.3d at 346, 640 N.E.2d at 898–899, the Ninth District Court of Appeals recognized that "other recreational pursuits" includes "myriad activities." Finally, in *Price v. New Madison* (Oct. 26, 1994), Darke App. No. 1348, unreported, 1994 WL 587548, this court explained:

"Ohio courts have construed R.C. 1533.18 broadly. The purpose of the statute is 'to encourage owners of premises suitable for recreational pursuits to open their land to public use without worry about liability.' *Marrek v. Cleveland Metroparks Bd. of Commrs.* (1984), 9 Ohio St.3d 194, 198 [459 N.E.2d 873, 877]. A wide range of activities * * * have qualified as recreational use * * *."

In *Price,* we also recognized that the Ohio Supreme Court "[has] bestowed recreational user status on a plaintiff engaged in an activity tangental or incidental to recreation and extended that status to a time beyond the completion of the recreational event itself * * *." Given this historically expansive reading of "other recreational pursuits," we have no difficulty placing in-line skating within the ambit of R.C. 1533.18(B).

---

1. We acknowledge, however, that property may be used for recreational purposes without being transformed into "recreational premises." Indeed, as the Sixth District Court of Appeals noted in *Brinkman v. Toledo* (1992), 81 Ohio App.3d 429, 434–435, 611 N.E.2d 380, 383–384, "[I]t is not uncommon to find children playing ball in city streets, or to see families strolling the sidewalks of city neighborhoods. However the essential character of streets is not recreational. Nor are sidewalks held out as essentially recreational despite being commonly used for recreational purposes." The key distinction between the present case and the situations envisioned by the *Brinkman* court is that Ross did not skate in the parking lot uninvited. Although children play in streets and families stroll on sidewalks, no one holds these areas out as "recreational." By contrast, in the present case the appellees specifically held out the Lincoln Park parking lot as a premises available to the public for recreational pursuits without payment of a fee.

In opposition to our holding, Ross raises an additional argument, however, suggesting that the appellees were not owners, lessees, or occupants of the demonstration area. As we noted above, R.C. 1533.181 provides immunity from liability only to owners, lessees, or occupants of certain premises. In the present case, the record contains no evidence suggesting that the appellees were owners or lessees of the parking lot, and the appellees do not advance such an argument. Instead, the appellees contend they were "occupants" of the parking lot within the meaning of R.C. 1533.181.

Significantly, we note that Ohio's recreational user statute provides no definition of the terms "owner," "lessee," or "occupant." *Rankey v. Arlington Bd. of Edn.* (1992), 78 Ohio App.3d 112, 115, at footnote 2, 603 N.E.2d 1151, 1153, at footnote 2. In *Miller, supra,* however, the Ohio Supreme Court rejected an argument that a softball tournament sponsor constituted an "occupant" pursuant to the recreational user statute. Instead, the court found that the tournament sponsor was only a "user" of Kettering Field. *Id.* at 116, 537 N.E.2d at 1297. In support of its decision, the court reasoned that "occupant" status is conferred upon a person having "the right to admit or exclude entry onto the property." *Id.*

 Applying the *Miller* court's definition to the present case, we deem the appellees "occupants" of the Lincoln Park parking lot. In deposition testimony, Thomas J. Davis of Out–N–About Sports explained that anyone wishing to skate in the demonstration area first had to sign the waiver and release. This requirement applied even to those skaters using their own equipment. Later in his testimony, Davis indicated that Donald Strasser, with whom Ross collided, "had the same permission [to skate] that all the other participants had." Finally, Davis stated that if he had observed any reckless skaters, "we definitely would have ejected them from the area." In our view, these statements demonstrate the appellees' ability to regulate admission to and exclusion from the demonstration area. Accordingly, we reject Ross's argument that the appellees constituted "users" rather than "occupants" on the day of her injury.

In a final argument, Ross contends that the trial court erred by equating the appellees' "marketing demonstration" with a "recreational activity." Specifically, Ross reasons that "[a]lthough there be some recreation in trying out the equipment, the purpose of the demonstration is the promotion and marketing of products, a business pursuit."

 This court does not dispute that the appellees' primary motivation for conducting the in-line skating event was business-related. Nevertheless, nothing in R.C. 1533.181 excludes owners, lessees, or occupants based upon their subjective motivation for opening up property to the general public for recreational

purposes without charging a fee. Rather, the critical inquiry involves only "the character of the property upon which the injury occurs and the type of activities for which the property is held open to the public." *Miller, supra,* 42 Ohio St.3d at 114, 537 N.E.2d at 1296. Consequently, we find unpersuasive Ross's reliance upon the appellees' business motivation, and we overrule her first assignment of error.

In her second assignment of error, Ross contends that the trial court erred by granting summary judgment for Rollerblade, Inc., based upon the waiver and release she signed. Specifically, Ross claims that the trial court should have construed the release strictly against Rollerblade, Inc., and should have declared the release ineffective given Rollerblade's "reckless" or "wanton" misconduct.

Our rejection of Ross's first assignment of error, however, renders this assignment of error moot. Having found both appellees immune from liability pursuant to Ohio's recreational user statute, we need not consider whether the waiver and release also exculpated Rollerblade, Inc., from liability. Consequently, in accordance with App.R. 12(A)(1)(c), we need not resolve the issue.

In her final assignment of error, Ross contends that "the trial court erred in granting summary judgment on the grounds that there were no material issues of fact sufficient to allow the jury to hear evidence for punitive damages." Specifically, Ross claims that sufficient evidence of wanton or reckless misconduct by the appellees exists to submit the issue to a jury.

We disagree. As the trial court properly noted, "punitive damages are intended to punish and deter conduct resulting from a mental state so callous in its disregard for the rights and safety of others that society deems it intolerable." *Calmes v. Goodyear Tire & Rubber Co.* (1991), 61 Ohio St.3d 470, 473, 575 N.E.2d 416, 419. Consequently, punitive damages require a finding of "actual malice." *Id.* The *Calmes* court defined "actual malice" as "(1) that state of mind under which a person's conduct is characterized by hatred, ill will, or a spirit of revenge, or (2) a conscious disregard for the rights and safety of other persons that has a great probability of causing substantial harm." *Id.,* quoting *Preston v. Murty* (1987), 32 Ohio St.3d 334, 512 N.E.2d 1174, at the syllabus.

After reviewing the record, we cannot accept Ross's argument that the appellees' actions arguably justified awarding punitive damages. In the present case, Ross contends that Strasser acted recklessly, willfully, and wantonly when he collided with her. Furthermore, she contends that the two appellees acted wantonly by failing to supervise Strasser and the other skaters adequately, by failing to segregate more experienced skaters, and by failing to provide adequate instructions.

Even assuming, *arguendo*, however, that Strasser recklessly collided with Ross, Strasser is not a party to the present appeal, and his isolated act alone would not justify finding wanton misconduct on the part of the appellees. Instead, we are convinced Ross's allegations against the appellees constitute nothing more than allegations of negligence. We find absolutely no evidence in the record suggesting that the appellees acted with wanton disregard for Ross's safety or were motivated by actual malice. Indeed, in her own deposition testimony Ross stated that the skating demonstration "looked as though it was being controlled well and that people were being mindful of the beginning people out in the parking lot." Accordingly, we cannot say that the trial court erred by finding no evidence to justify allowing the jury to consider punitive damages.

Therefore, we overrule Ross's third assignment of error and affirm the judgment of the Montgomery County Common Pleas Court.

*Judgment affirmed.*

FAIN and FREDERICK N. YOUNG, JJ., concur.