**TOMBA et al.**

v.

**CITY OF WICKLIFFE.**

Court of Common Pleas of Ohio,
Lake County.

No. 00CV000923.

Decided June 27, 2001.

**12**

*Alan S. Levine,* for plaintiffs.

*Nick C. Tomino,* for defendant.

---

ON RECONSIDERATION

EUGENE A. LUCCI, Judge.

This matter came on for consideration on defendant's motion to reconsider order denying defendant city of Wickliffe's motion for summary judgment, filed June 11, 2001, plaintiffs' memorandum in opposition thereto, filed June 22, 2001, at 11:36 a.m., and defendant's reply brief, filed June 22, 2001, at 11:37 a.m.

This court, by order of May 16, 2001, denied defendant's motion for summary judgment. The motion for summary judgment was premised on two arguments: (1) immunity under the political subdivision tort liability act and (2) immunity under Ohio's recreational user statute. The court's denial was based on credible evidence, which, when viewed most strongly in favor of the plaintiffs, suggests that the "land on which the injury occurred" was not open to the general public. This court opined that, in determining whether a person is a recreational user under R.C. 1533.18(B), the analysis should focus on the character of the property upon which the injury occurs and the type of activities for which the property is held open to the public. The goal of this analysis is to determine the character of the premises. In the present case, when construing the evidence most strongly in favor of the plaintiffs, it is apparent that the character of the property upon which the injury occurred was that of a picnic pavilion, restricted by the city for use by Wickliffe city residents only, and located in the midst of a public park.

Because the picnic pavilion was not open for use by the general public, the recreational user statute does not apply to injuries sustained by a Wickliffe city resident who was using the pavilion facility when she was injured. A contrary ruling would encourage the city of Wickliffe to continue to restrict the right to reserve and use the picnic pavilion to city residents. This would run counter to the legislative purpose of granting immunity to encourage owners of land to make the land available for public recreation free of charge.

As applied to municipalities, the recreational user statute seeks to shift the risk and cost of injury from the taxpayer to the general public in exchange for the municipal landowner opening the premises up for use by the general public. A municipality that restricts the use of municipal premises—whether by the requirement of fees or other consideration, or by restricting the reservation and use of municipal facilities to residents only—makes those premises into an island

of exclusivity; and, in so doing, the municipality forsakes the protection that would otherwise be available under the recreational user statute.

In cases where, as here, the municipality has restricted the reservation rights and the use of a municipal facility to residents only, it is only fitting that the municipality expend municipal taxpayer funds to shoulder the risk and cost of injury. Obviously, it may do so through self-insurance or by purchasing liability insurance.

Defendant Wickliffe urges a reconsideration and argues that this court's order was in error because the case law cited by this court was allegedly superseded by legislative action when the General Assembly amended the recreational user statute, R.C. 1533.181, in 1995 to add the following language:

"(B) Division (A) of this section applies to the owner, lessee, or occupant of privately owned, nonresidential premises, whether or not the premises are kept open for public use and whether or not the owner, lessee, or occupant denies entry to certain individuals." 146 Ohio Laws, Part I, 904, 1097.

For the reasons set forth below, defendant's motion to reconsider is hereby denied.

*Case Law Decided Prior to the 1995 Amendment of R.C. 1533.181*

■ As developed more fully in this court's order denying defendant Wickliffe's motion for summary judgment, the case law interpreting the recreational user immunity statute, prior to the 1995 amendment to R.C. 1533.181, defined the scope of the statute in terms of its judicially defined purpose. That purpose was centered on the idea that the legislature extended immunity to landowners in order to encourage landowners to open their recreational land to the general public. The immunity was a *quid pro quo* for opening the land to the public for recreational purposes.

This statutory immunity originally applied by its terms to private landowners only. The immunity was later extended to political subdivisions by virtue of the Ohio Supreme Court's abolishment of sovereign immunity for political subdivisions, in which the Supreme Court made political subdivisions liable for torts "to the same extent" as private parties. Thus, since private parties were immune from liability when the recreational user statute applied, political subdivisions had the same immunity. However, unlike the private landowners who were protected by the statute directly, political subdivisions were protected derivatively. As the following analysis of existing case law shows, the Ohio General Assembly did not intend to alter the derivative immunity of political subdivisions when it expanded the direct immunity of private landowners.

*Case Law Decided After the 1995 Amendment of R.C. 1533.181*

None of the cases interpreting the recreational user immunity statute *after* the effective date of the 1995 amendment to R.C. 1533.181 has adopted the expansive view espoused by the defendant in the present case. A review of the appellate and Ohio Supreme Court decisions indicates that courts in Ohio are still interpreting the scope of the recreational user immunity in terms of the public policy granting immunity to those who open their recreational lands to the public. The only recent exception to this view involves a case where a *private* landowner excluded some members of the general public but was nonetheless found to be immune under the terms of the 1995 amendment.

■ In light of this continuing judicial trend to uphold the *quid pro quo* policy behind the statute, and in the absence of any applicable judicial precedent or express legislative language to the contrary, it is not the role of this court to engage in judicial activism by extending the reach of the 1995 legislative amendment. Where political subdivisions exclude the general public from their recreational facilities, they remove themselves from the judicially created and derivative immunity otherwise provided by the recreational user statute. A review of the relevant post-amendment case law follows.

In *Parks v. Eaton* (Oct. 9, 1995), Preble App. No. CA95–03–004, unreported, 1995 WL 591148, the court of appeals affirmed the trial court's grant of summary judgment in favor of defendant city of Eaton, finding that the city was immune under R.C. 1533.181. In *Parks,* the plaintiff was descending an embankment in an effort to reach the shoreline in a public park. He was attempting to go fishing. While descending, he slipped and fell on a sharp stake or tree stump that had been left by city workers who were removing brush in the area. In response to the plaintiff's argument that he was not a "recreational user" because he did not have the city's express permission to fish in the park, the court reasoned that "[a] person need not have express permission from a municipality to enter *lands which are held open to the public*[1] for gratuitous, recreational use in order to qualify as a 'recreational user' for purposes of R.C. 1533.18 and 1533.181." (Emphasis added.) *Id.* at * 1. The court based its rationale expressly on the evidence that "*the city of Eaton has held Crystal Lake open to the general public* for gratuitous, recreational fishing for at least the past ten years. * * * Accordingly, we find that the city is immune from liability under R.C. 1533.181 as a matter of law * * *." (Emphasis added.) *Id.* at * 2.

In *Hubbard v. Norwood* (Dec. 13, 1995), Hamilton App. No. C–950184, unreported, 1995 WL 734053, the court of appeals affirmed the trial court's grant of

---

1. Although the facts in *Parks* arose prior to the passage of the 1995 amendment to R.C. 1533.181, the decision was issued subsequent to the effective date of the amendment. Hence, although the *Parks* court could have made mention of the amendment, it did not do so.

summary judgment in favor of the defendant, finding that the city was immune under the recreational user statute. Plaintiff stepped in a hole and broke her ankle while leaving a festival held at the city's Waterworks Park. The court rejected the plaintiff's argument that she was not a "recreational user" and that she was not engaged in a "recreational pursuit" when she was injured. In so doing, the court followed *Miller v. Dayton*[2] in observing that "in our analysis of whether Hubbard was a 'recreational user' we are required to focus on the character of the property upon which the injury occurred and the types of activities *for which the property was held open to the public.*"[3] (Emphasis added.) *Id.* at * 2.

In *Pippin v. M.A. Hauser Enterprises, Inc.* (1996), 111 Ohio App.3d 557, 676 N.E.2d 932, the court held that summary judgment for the defendant municipality was proper under the recreational user statute where the plaintiff injured himself while sliding into second base on a municipal softball field. In summarizing R.C. 1533.181, the court cited *Johnson v. New London* (1988), 36 Ohio St.3d 60, 521 N.E.2d 793, and *LiCause v. Canton* (1989), 42 Ohio St.3d 109, 537 N.E.2d 1298, as being authoritative in describing the scope of the immunity enjoyed by political subdivisions under the recreational user statute.[4]

In *Stiner v. Dechant* (1996), 114 Ohio App.3d 209, 683 N.E.2d 26, the court held that *private* landowners were immune under the recreational user statute from any liability for injuries sustained by a snowmobiler while riding on the defendant's land. The injury in *Stiner* occurred on January 15, 1994, and the lawsuit was filed on September 29, 1994. Nonetheless, the court's analysis of the recreational user statute was based on the 1995 amendment to R.C. 1533.181. The court stated:

"In past decisions on recreational user immunity, the Ohio Supreme Court held that, in order for a property owner to be immune under R.C. 1533.181, the property upon which the injury occurred must have been held open for public use. See *Fryberger v. Lake Cable Recreation Assn., Inc.* (1988), 40 Ohio St.3d 349, 350–351, 533 N.E.2d 738, 739–741. Effective September 29, 1995, however,

---

2. *Miller v. Dayton* (1989), 42 Ohio St.3d 113, 537 N.E.2d 1294.

3. As in *Parks v. Eaton, supra,* the facts in *Hubbard* arose prior to the passage of the 1995 amendment to R.C. 1533.181. The *Hubbard* decision was issued subsequent to the effective date of the amendment. Hence, although the court could have made mention of the amendment, it did not do so.

4. The injury in *Pippin* occurred in 1992, and suit was filed in 1994. Hence, the 1995 amendment arguably did not control. However, if the 1995 amendment were intended by the General Assembly to have the effect currently urged by the defendant in the present case, it seems plain that the *Pippin* court would have at least mentioned it as a major change in the derivative immunity afforded to political subdivisions.

the General Assembly amended R.C. 1533.181 to no longer require that 'privately owned, nonresidential' property be 'kept open for public use.' Under R.C. 1533.181(B), an 'owner, lessee, or occupant of *privately* owned, nonresidential premises' is immune from liability 'whether or not the premises are kept open for public use and whether or not the owner, lessee, or occupant denies entry to certain individuals.'" (Emphasis added.) *Stiner*, 114 Ohio App.3d at 214, 683 N.E.2d at 29.

In the six years since the enactment of the 1995 amendment to R.C. 1533.181, this appears to be the only case in Ohio that has sought expressly to apply the amended language. The defendant in *Stiner* was a private landowner and not a political subdivision. If, as defendant has urged in its motion to reconsider, the 1995 amendment indeed expanded the scope of the derivative immunity of political subdivisions under the recreational user statute, it seems likely that at least one of the fifteen cases[5] decided since then would have mentioned this development.

In *Thatcher v. Holiday Point Marina, Inc.* (Nov. 20, 1996), Scioto App. No. 95CA2394, unreported, 1996 WL 682163, the court held that the recreational user

---

**5.** Admittedly, none of the fifteen appellate and Supreme Court cases referencing the recreational user statute since the effective date of the 1995 amendment has been presented with the precise facts of this case. Here, a political subdivision has excluded the vast majority of the public from being able to use the recreational facility where plaintiff was injured.

Nevertheless, since 1995, every appellate district except the Fifth District has had the opportunity to mention or discuss the interpretation urged by the defendant. None has done so. In addition, as discussed more fully below, the Ohio Supreme Court had the opportunity to do so—and did not—in *Zivich v. Mentor Soccer Club, Inc.* (1998), 82 Ohio St.3d 367, 696 N.E.2d 201.

This court is unaware of any law review articles or other commentary in the legal community discussing the defendant's proposed interpretation of the 1995 amendment.

Furthermore, if the Ohio General Assembly had wished to extend the judicially created recreational user immunity to political subdivisions—regardless of whether they held the subject land open to the public—it could have done so directly. It did not have to use the device of extending a judicially created and derivative extension of a statutory immunity directed first at protecting private landowners. The General Assembly could have used express language in the 1995 amendment to the recreational user statute, or it could have amended R.C. Chapter 2744 (political subdivision tort liability). It did neither.

It is difficult to imagine the line of thinking that would have produced the legislative intention now urged by the defendant. Under defendant's view, the General Assembly is presumed to have used language directed solely to private landowners in order not only to expand the scope of the recreational user immunity for Ohio's *private* landowners (to include those private landowners who exclude some, but not all, recreational users), but also to simultaneously expand the judicially derived recreational user immunity enjoyed by political subdivisions. And the legislature is presumed to have done so without making one specific reference to the fact that it was striking down the *quid pro quo* rationale in a line of decisions by the Ohio Supreme Court, and without mentioning the effect that this amendment would have on the judicially derived immunity enjoyed by political subdivisions.

It is plain to this court that the legislature never intended that the 1995 amendment would alter the judicially derived recreational user immunity of political subdivisions.

statute made the defendant corporation immune from suit where (1) the corporation operated a marina and (2) the corporation subleased its property from the corporation's individual owner, who in turn leased the property from the United States Army Corps of Engineers. The lease between the individual owner and the federal government required that the property be used " 'solely for the conduct of business in connection with the recreational development of the premises *for the general use of the public.*' " (Emphasis *sic.*) *Id.* at * 1. In its motion for summary judgment, the defendant corporation asserted that it was immune under R.C. 1533.181 because its marina was open to the public for recreational use and because the injured plaintiff had been a recreational user of the facility. Plaintiff argued, in part, that the statute did not apply because the defendant's facility was not held open to the public. The trial court granted the defendant's summary judgment, and the court of appeals affirmed.[6]

In *Ross v. Strasser* (1996), 116 Ohio App.3d 662, 688 N.E.2d 1120, the court held that the recreational user statute applied to plaintiff's claims, which arose from an in-line skating demonstration held in September 1993 in a private parking lot in a commercial development known as Lincoln Park, even though the sponsors did not own or lease the parking lot. The plaintiff in *Ross* argued that the parking lot was not a recreational facility and that " '[i]t is only when the property is held open to the public for recreational purposes that the statute applies.' " *Id.*, 116 Ohio App.3d at 666, 688 N.E.2d at 1122. In its September 29, 1995 decision and order, the trial court deemed Lincoln Park a "public park" and relied largely upon *Miller v. Dayton*, 42 Ohio St.3d 113, 537 N.E.2d 1294, and *Loyer v. Buchholz* (1988), 38 Ohio St.3d 65, 526 N.E.2d 300, to hold the defendants immune from liability pursuant to R.C. 1533.181. In support of its ruling, the trial court first cited *Loyer*, which—as the court of appeals observed—held that public parks are " 'entitled to the immunity conferred by R.C. 1533.181 * * * *provided that the land is held open to the general public* without the payment of a fee, and the injury results from a recreational pursuit within the meaning of R.C. 1533.18(B).' " (Emphasis added.) *Ross v. Strasser*, 116 Ohio App.3d at 667, 688 N.E.2d at 1123.

In *Zivich v. Mentor Soccer Club, Inc.* (Apr. 21, 1997), Lake App. No. 95–L–184, unreported, 1997 WL 203646 ("*Zivich I*"), affirmed (1998), 82 Ohio St.3d 367, 696 N.E.2d 201, the court of appeals held that a release signed by one of the parents of a young boy in consideration of his being able to play soccer constituted an

---

6. The court of appeals noted, in passing, that "the purpose of [the] recreational user statutes is to increase the availability of recreational land" and that " 'recreational use' statutes are intended to reduce the growing tendency of landowners to withdraw land from recreational access by removing the risk of gratuitous tort liability that a landowner might run unless he could successfully bar any entry to his property for recreational purpose," citing 62 American Jurisprudence 2d (1990), 481, Premises Liability, Section 119.

enforceable covenant not to sue. On November 16, 1995, the trial court had granted summary judgment to defendant city of Mentor and to defendant Mentor Soccer Club, Inc. for three reasons. First, the trial court held that any claim against the city was barred by the recreational user statute. Second, the trial court held that the city was entitled to immunity under R.C. 2744.02(A)(1). And third, the trial court held that the release signed by one of the parents barred the claims against both defendants. In affirming the trial court's decision, the court of appeals confined its holding to the question of the enforceability of the release. Having decided that issue in favor of the defendants, the court of appeals determined that the issues raised by the recreational user statute and the political subdivision tort liability statute were moot.[7]

Nevertheless, the *Zivich* court of appeals did discuss the recreational user statute in the context of determining the existing public policy in Ohio. The court stated, "After careful deliberation, we disagree that this release should be stricken as against public policy. The General Assembly has enacted statutes designed to encourage recreational activities. R.C. 1533.18 *et seq.* was originally enacted 'to encourage owners of premises suitable for recreational pursuits *to open their land to public use* without worry about liability.' *Moss v. Dept. of Natural Resources* (1980), 62 Ohio St.2d 138, 142, 16 O.O.3d 161, 164, 404 N.E.2d 742, 745. Although it was initially intended by the legislature only to apply to rural lands, later Supreme Court opinions extended the grant of immunity to municipalities against claims filed by recreational users of city parks. *E.g., Johnson v. New London* (1988), 36 Ohio St.3d 60, 521 N.E.2d 793, syllabus. In either event, the statute evinces the policy in this state to promote recreational activities." (Emphasis added and footnote omitted.) *Id.* at * 11.

Judge Nader also observed in footnote 13 of his majority opinion:

"Justice Alice Robie Resnick correctly interpreted R.C. 1533.181 when, as an appellate judge of the Sixth District Court of Appeals, she wrote:

" '[T]he * * * purpose of the recreational use statute was to promote the creation of recreational lands to supplement the park system of both federal and state governments. To accomplish this objective, the recreational use statute was adopted to encourage private landowners *to open up their rural lands for gratuitous recreational use by the general public.* The incentive to these private landowners was the granting of immunity in the event that the recreational user was injured on their property.

" ' * * *

" 'This court would be remiss in failing to note that R.C. 1533.181 is found in Title 15 of the Revised Code which is entitled "Conservation of Natural Re-

---

7. *Zivich I* at * 13 (Nader, J.).

sources." Chapter 1533 is entitled "Hunting; Fishing," and the entire chapter is devoted to rural areas and the protection of wildlife.' (Emphasis *sic.*) *Loyer v. Buchholz* (July 17, 1987), Erie App. No. E–87–5, unreported, at 4, 1987 WL 14231, affirmed (1988), 38 Ohio St.3d 65, 526 N.E.2d 300.

"This writer [Judge Nader] was a member of the General Assembly when the recreational user statute was debated and enacted, and can attest to its legislative intent from firsthand experience." (Emphasis added in part.)

Although unanimous in its judgment, the court of appeals decision in *Zivich* generated separate opinions by each of the three appellate court judges. Judge Nader's majority opinion included an extensive discussion of the proper role of public policy in the decisionmaking of an appellate court, and declared that the Eleventh District Court of Appeals is opposed to judicial activism.[8] Judge Christley's concurring opinion similarly expressed her discomfort in determining public policy concerning issues of significant consequence and stated that this type of policy should be determined by either our state legislature or the Supreme Court of Ohio. Similarly, Judge Ford's opinion, concurring in judgment

---

8. With regard to judicial activism, Judge Nader wrote:

"While there may be legitimate public policy reasons why parents ought to be permitted to waive future claims that may come to belong to their children, we are unable to uphold the 'release' on these grounds because, in our opinion, judges should confine themselves to interpreting the law, not making it. Although some hold the view that courts can declare the public policy of this state and may 'mark out natural justice' where the legislature is silent on a particular matter, see *Tamarkin v. Children of Israel, Inc.* (1965), 2 Ohio App.2d 60, 65, 31 O.O.2d 103, 106, 206 N.E.2d 412, 416, we oppose judicial activism.

"The judiciary is not the policy-making branch of the government and is not at liberty to usurp that function; if a new principle of law is laudable or advisable on the grounds that it would serve public policy, it is, in the first instance, an issue for the General Assembly. *Meyer v. Parr* (1941), 69 Ohio App. 344, 350–351, 24 O.O. 110, 112–113, 37 N.E.2d 637, 641. If courts are to be involved at all, then it should be up to the Supreme Court to set public policy in the absence of a legislative pronouncement on the issue. *James A. Keller, Inc. v. Flaherty* (1991), 74 Ohio App.3d 788, 792, 600 N.E.2d 736, 738 ('In Ohio, our Supreme Court is the primary judicial policymaker.'). See, also, *Greeley v. Miami Valley Maint. Contractors, Inc.* (1990), 49 Ohio St.3d 228, 551 N.E.2d 981 (creating a new exception to the employment-at-will doctrine based upon public policy). ' "[T]his court, as an 'error-correction' intermediate appellate court, has no power or right to establish public policy, * * * " ' as a basis for new law. (Emphasis omitted). *Schlachet v. Cleveland Clinic Found.* (1995), 104 Ohio App.3d 160, 168, 661 N.E.2d 259, 264, quoting *Sherman v. Millhon* (June 16, 1992), Franklin App. No. 92AP–89, unreported, 1992 WL 142368. See, also, *Flaherty*, 74 Ohio App.3d at 792, 600 N.E.2d at 738 ('As an intermediate appellate court, we should use caution in determining what the public policy of this state should be.'). * * *

" '* * *

" '* * * Appellate courts use policy considerations in different ways depending on the remedy prayed for, as this case illustrates. Judges are not permitted to legislate from the bench, so we cannot enact new principles of law, or those that cannot be found in the Constitution, statutes, or existing judicial opinions, based upon our own notions of what would be in the public's best interest." *Zivich I* at *7–9.

only, acknowledged that policy pronouncements should be a significantly limited concept at the appellate level and that judicial lawmaking should be performed infrequently and only under the narrowest of circumstances. However, he departed from the majority opinion's categorical dismissal of judicial activism and opined that judicial lawmaking is not only permissible (when the legislature and the high court are silent), but asserted that under certain circumstances, it is unavoidable.[9]

In *Shutrump v. Mill Creek Metro. Park Dist.* (Apr. 2, 1998), Mahoning App. No. C.A. 40, unreported, 1998 WL 158864,[10] the court of appeals affirmed the trial court's grant of summary judgment in favor of the defendant park district. In holding that the defendant was immune under the recreational user statute, the court rejected the plaintiff's argument that since she was using the park trail (where she fell) as a shortcut to a convenience store—and not as a hiking trail— she was not a recreational user under the statute. In its analysis of R.C. 1533.18, the court on *Miller v. Dayton*, 42 Ohio St.3d 113, 537 N.E.2d 1294, and *LiCause v. Canton*, 42 Ohio St.3d 109, 537 N.E.2d 1298, noting in each case that the immunity attached where the property was "held open to the public" for recreational purposes. The court then noted:

"These decisions are consistent with the purpose and policy behind Ohio's Recreational User Statute. The intent of the legislation was 'to encourage

---

9. After quoting from Justice Holmes on the interstitial role of judicial legislation, Judge Ford wrote:

"This writer concurs with the fundamental tome of jurisprudential principle, that in Ohio, as in many other jurisdictions, appellate courts are primarily 'error courts,' and that the Supreme Court is a 'policy court.' However, to elevate this judicial characterization to an absolute law of nature is an exercise in strained logic resulting in a premature demise of Bunyan, and one that ignores Plato's teaching in the 'Allegory of the Cave.' Reality tells us— and not the shadows on the wall—that 3,009,603 cases were filed in the trial courts of Ohio in 1995. We would readily concede that a goodly number of those issues are not likely to be subjects of further judicial review. Out of that total number in 1995, approximately three-tenths of one percent, or 11,435 appeals were taken to the twelve appellate districts of Ohio, which resulted in 7,612 opinions at the appellate level. Correspondingly, the Supreme Court of Ohio issued a total of seven hundred twenty-six opinions of which one hundred thirteen were discretionary ones.

"This statistical analysis reinforces the banal verity that the courts of appeals are the courts of last resort for most litigants. If we were to rigidly adhere to the logic of the majority on this issue, we would create and expand a barren vacuum on nonpolicy pronouncements *ad nauseum* and reduce the role of appellate courts to a gelding status.

"This writer repeats that 'policy pronouncements' are, and should remain, a significantly limited concept at the appellate level. The Supreme Courts of our land cannot declare on every case in the appellate fulcrum. Meanwhile, the trial bench, bar, and litigants are entitled to some direction that may involve, in part, pronouncements on public policy issues." *Zivich I* at * 18–19.

10. The facts giving rise to the *Shutrump* case arose on July 2, 1994, and the lawsuit was filed on July 1, 1996.

owners of premises suitable for recreational pursuits *to open their land to public use* without worry of liability.' *Moss v. Department of Natural Resources* (1980), 62 Ohio St.2d 138, 142, [16 O.O.3d 161, 164], 404 N.E.2d 742 [745]. To draw a distinction between persons based on the activity they were engaged in on the property would defeat the purpose of the legislation. The owners of recreational property, including parks, would be exposed to liability based not on the purpose for which the park is *held open to the public*, but based on each individual's purpose for using the property.

"If the test was activity based, the owners of such premises would have no reasonable way of ensuring their immunity. Consequently, this would defeat the legislative intent of the Ohio's Recreational User Statute and, perhaps, provide a disincentive for owners of such premises *to open them up to the public for the recreational use of all people on a zero-cost basis.*" (Emphasis added). *Shutrump,* at * 2–3.

In *Zivich v. Mentor Soccer Club, Inc.* (1998), 82 Ohio St.3d 367, 696 N.E.2d 201 ("*Zivich II*"), the Ohio Supreme Court affirmed the decision of the Eleventh District Court of Appeals.[11] In its discussion of R.C. 1533.18 and 1533.181, the Supreme Court described these recreational user statutes as "designed to encourage landowners *to open their land to public use* for recreational activities without fear of liability." (Emphasis added.) *Id.,* 82 Ohio St.3d at 371, 696 N.E.2d at 204. The court also stated that these statutes "together provide that *private* entities that *hold land open* for recreational use without charge are immune from tort liability for any injury caused by a recreational user." (Emphasis added.) *Id.* at 371, 696 N.E.2d at 204–205. The court did not discuss or imply that the derivative immunity of political subdivisions was in any way affected by the 1995 amendment.[12] If, as defendant asserts, the 1995 amendment was intended to expand the municipal immunity so that it applies to recreational users regardless

---

**11.** The Supreme Court also agreed with Judge Ford's analysis of the role of public policy in appellate decisionmaking, stating in footnote 4:

"The majority opinion stated that an intermediate appellate court was not the appropriate forum to decide public policy. However, in a common-law system, a judicial decision declaring the rights of the parties can be based on several grounds, one of which is public policy. Hopkins, Public Policy and the Formation of a Rule of Law (1971), 37 Brooklyn L.Rev. 323, 330. Therefore, public policy is an appropriate device to be used by an appellate court to decide a case." *Zivich II,* 82 Ohio St.3d at 371, 696 N.E.2d at 204.

**12.** On this note, Justice Cook's concurring opinion consisted of the following statement:

"I join in the well-reasoned majority opinion. I write separately only to point out that decision is firmly grounded in the public policy of the General Assembly, as evinced by the legislative enactments cited by the majority." *Zivich II,* 82 Ohio St.3d at 376, 696 N.E.2d at 208.

of whether the municipality's recreational facilities are open to the general public, this is a curious silence indeed.[13]

Subsequent to the Ohio Supreme Court's decision in *Zivich*, the Third District Court of Appeals decided *Goodluck v. Findlay* (Mar. 3, 1999), Hancock App. No. 5–98–36, unreported, 1999 WL 156033.[14] There, the court of appeals held that the city of Findlay was protected by the recreational user immunity. The plaintiff, an eight-year-old child, was injured on a parcel of the city's land known as the "Great Karg Well Historic Site." He rode his bicycle across thirty feet of grass to the top of a concrete river embankment. After descending the embankment on foot to get his brother to come home, he walked back to the top of the embankment. While retrieving the bike, he somehow fell fifteen feet off the concrete embankment and was severely injured. In upholding the municipality's immunity, the court's centered its rationale on the public policy behind the recreational user statute. As the court articulated the public policy, it repeatedly emphasized that the statute was based on an exchange of immunity in return for opening the land to the public. The court stated:

"R.C. 1533.181 gives owners of premises *held open to the public* for recreational use immunity from liability for injuries sustained by persons using the premises. * * *

"* * *

"* * * Although the statute appears to apply only to privately held land, the statute has been interpreted to include lands owned by states and municipalities. * * *

---

Hence, it is fair to conclude that the public policy implications of all of the statutes cited by the majority were considered by Justice Cook. Yet, she too makes no mention of the interpretation now suggested by defendant city of Wickliffe.

13. The silence is even "louder" when one observes that immediately following the court's reference to the recreational user statute, Justice Sweeney refers to another statute that was passed by the General Assembly after the facts in *Zivich* occurred. Justice Sweeney wrote:

"Then, in 1996, R.C. 2305.381 and 2305.382 were enacted, effective January 27, 1997. Together these statutes accord qualified immunity to unpaid athletic coaches and sponsors of athletic events. Hence the General Assembly has articulated its intent of encouraging the sponsorship of sports activities and protecting volunteers. However, R.C. 2305.381 and 2305.382 were enacted after this cause of action arose. Thus our role is to render a decision that fills the gap left open before the effective date of the statutory enactments." *Zivich II,* 82 Ohio St.3d at 371, 696 N.E.2d at 205.

Of course, the precise issue before the Supreme Court concerned the application of the recreational user immunity to a private soccer club. The city of Mentor had already settled with the plaintiffs and was dismissed from the lawsuit in December 1997. Nevertheless, it seems likely that if Justice Sweeney subscribed to the view of the 1995 amendment currently espoused by the defendant, he would have discussed it here.

14. The facts in *Goodluck* arose on August 18, 1994.

"* * *

"[In *Miller v. Dayton* (1989), 42 Ohio St.3d 113, 537 N.E.2d 1294, the] Supreme Court of Ohio found that '[i]n determining whether a person is a recreational user under R.C. 1533.18(B), the analysis should focus on the character of the property upon which the injury occurs and the type of activities for which the property is *held open to the public.*' *Id.* at paragraph one of the syllabus. * * *

"['] The existence of statutory immunity does not depend upon the specific activity pursued by the plaintiff at the time of plaintiff's injury. Rather, the inquiry should focus on the nature and scope of activity for which the premises are *held open to the public.* The goal is to determine the character of the premises. *If the premises qualify as being open to the public for recreational activity, the statute does not require a distinction to be made between plaintiffs depending upon the activity in which each was engaged at the time of injury.*['] [*Id.,* 42 Ohio St.3d at 115, 537 N.E.2d at 1296–1297.] * * *

"'These decisions are consistent with the purpose and policy behind Ohio's Recreational User Statute.' *Shutrump, supra.* The intent of the legislation was 'to encourage owners of premises suitable for recreational pursuits *to open their land to public use* without worry of liability.' [*Moss v. Dept. of Natural Resources* (1980), 62 Ohio St.2d 138, 142, 16 O.O.3d 161, 164, 404 N.E.2d 742, 745.]

"To draw a distinction between persons based on the activity they were engaged in on the property would defeat the purpose of the legislation. The owners of recreational property, including parks, would be exposed to liability based not on the purpose for which the park is *held open to the public,* but based on each individual's purpose for using the property.

"If the test were activity based, the owners of such premises would have no reasonable way of ensuring their immunity. Consequently, this would defeat the legislative intent of * * * Ohio's Recreational User Statute and, perhaps, provide a disincentive for owners of such premises *open them up to the public* for the recreational use of *all* people on a *zero* cost basis. * * *

"* * *

"We find that the premises qualify as being *open to the public* for recreational activities, including walking and bike riding. Thus, for purposes of R.C. 1533.181 and according to the nature and scope of the premises, [the child] was a recreational user entitling the [city] to immunity." (Emphasis added in part.)[15]

---

15. *Goodluck,* at * 2–3.

In *Ryll v. Columbus Fireworks Display Co.* (Sept. 5, 2000), Franklin App. Nos. 99AP–1061, 99AP–1311, unreported, 2000 WL 1239083 (appeal pending), the court held that the city of Reynoldsburg was immune under R.C. 1533.181 where the plaintiff's decedent was killed by a fragment of an exploding fireworks shell during a municipal Fourth of July fireworks display in a city park.[16] In discussing the recreational user statute, the court stated, "[T]he Ohio Supreme Court has made it very clear that R.C. 1533.181 applies to property which is owned and operated by the state or a political subdivision. *LiCause v. Canton* (1989), 42 Ohio St.3d 109 [537 N.E.2d 1298], syllabus; *Johnson v. New London* (1988), 36 Ohio St.3d 60 [521 N.E.2d 793], syllabus." In citing the pre-amendment decisions of *LiCause* and *Johnson*, the court made no mention of the 1995 amendment. Hence, by implication, it is fair to conclude that the Tenth District Court of Appeals did not view the 1995 amendment as somehow undercutting the *quid pro quo* public policy relied upon by the Ohio Supreme Court in its decisions prior to the amendment. Since the pre-amendment case law was based on the policy of extending immunity to political subdivisions in exchange for holding recreational land open to the general public, it would appear that the 1995 amendment did nothing to alter political subdivisions' derivative immunity.

In keeping with this view, the most recent cases interpreting and applying the recreational user statute have failed to adopt or even discuss the view asserted by the defendant in this case. See, *e.g., Onderak v. Cleveland Metroparks* (Dec. 7, 2000), Cuyahoga App. No. 77864, unreported, 2000 WL 1803230 (Cleveland Metroparks held immune under recreational user statute where plaintiff's decedent drowned at Huntington Beach); *Aumock v. State* (Feb. 6, 2001), Franklin App. Nos. 00AP–676, 00AP–683, unreported, 2001 WL 95877 (state held immune from liability where plaintiff's decedent drowned at Edgewater Beach); and *Vinar v. Bexley* (2001), 142 Ohio App.3d 341, 345, 755 N.E.2d 922, 925 (purpose of the statute is " ' "to encourage owners of premises suitable for recreational pursuits *to open their land to public use* without worry about liability." ' ").

The Limited Scope to the 1995 Amendment to R.C. 1533.181

By its terms, the 1995 amendment to R.C. 1533.181 applies only to "the owner, lessee, or occupant of privately owned, nonresidential premises, whether or not the premises are kept open for public use and whether or not the owner, lessee, or occupant denies entry to certain individuals." R.C. 1533.181(B).

 It is not the role of a trial court to make new law. *Stare decisis,* separation of powers, and the stability and integrity of the legal system all demand that a trial court interpret existing law and apply it to the facts of the

---

**16.** The facts in *Ryll* arose out of an incident on July 4, 1996, which was well after the effective date of the 1995 amendment.

disputes that come before the court. Although the Ohio Supreme Court and the courts of appeals are policymaking courts,[17] trial courts are not.

The Ohio General Assembly knows how to pass legislation designed to overturn certain decisions of the Ohio Supreme Court.[18] Similarly, the Ohio Supreme Court knows how to respond when the legislature overturns the Supreme Court's decisions.

■ In the present case, however, there is no indication that the 1995 amendment was intended by the General Assembly to eliminate the requirement that, in order for *political subdivisions* to fall under the judicially derived recreational user immunity of R.C. 1533.181, the *political subdivision* must hold the subject land "open to the public." In enacting R.C. 1533.181(B), the legislature made no reference to existing pronouncements by the Ohio Supreme Court. Hence, it is reasonable to conclude, as a matter of law, that the legislature did not intend to affect those pronouncements in any way. Nor, for that matter, has the Ohio Supreme Court indicated in any way—in the nearly six years since the amendment's enactment—that the 1995 amendment has somehow eliminated the requirement that, in order to be immune under the recreational user statute, political subdivisions must keep their recreational land "open to the public."[19]

For the foregoing reasons, defendant's motion for reconsideration of the denial of summary judgment is hereby denied.

*Motion denied.*

---

**17.** *Zivich v. Mentor Soccer Club, Inc.* (1998), 82 Ohio St.3d 367, 696 N.E.2d 201. See fn. 11, *supra.*

**18.** A perfect example of the legislature's ability to respond to the pronouncements of the Ohio Supreme Court was the enactment of the Political Subdivision Tort Liability Act (R.C. Ohio Chapter 2744), which was the General Assembly's response to the Ohio Supreme Court's judicial abolishment of sovereign immunity for political subdivisions.

**19.** In *Zivich v. Mentor Soccer Club, Inc.* (1998), 82 Ohio St.3d 367, 696 N.E.2d 201, which was decided nearly three years after the enactment of the 1995 amendment to R.C. 1533.181, the Ohio Supreme Court referred to the statute. The court stated, "The General Assembly has enacted statutes designed *to encourage landowners to open their land to public use* for recreational activities without fear of liability. *Moss v. Dept. of Natural Resources* (1980), 62 Ohio St.2d 138, 142, 16 O.O.3d 161, 164, 404 N.E.2d 742, 745. See R.C. 1533.18 and 1533.181, which together provide that private entities that *hold land open* for recreational use without charge are immune from tort liability for any injury caused by a recreational user." (Emphasis added.) *Id.,* 82 Ohio St.3d at 371, 696 N.E.2d at 204–205.