2006 ND 231

**TRINITY HOSPITALS, a North Dakota non-profit corporation, Petitioners,**

v.

**The Honorable Douglas L. MATTSON, Judge of the District Court, Northwest Judicial District, and Laura Phillips, as Co–Personal Representative, of the Estate of Eleanor Neiss and on behalf of the Heirs at Law of Eleanor Neiss, Respondents.**

No. 20060121.

Supreme Court of North Dakota.

Nov. 15, 2006.

Brenda L. Blazer (argued) and Michael T. Andrews (on brief), Vogel Law Firm, Bismarck, N.D., for petitioners.

Anthony J. Weiler (argued) and David S. Maring (appeared), Maring Williams Law Office, Bismarck, N.D., for respondents.

CROTHERS, Justice.

[¶ 1] Trinity Hospitals, a North Dakota non-profit corporation, petitions for a supervisory writ, asking this Court to direct the district court to vacate its order denying Trinity Hospitals' motion for summary judgment and to dismiss a wrongful death action by Laura Phillips, as personal representative of the estate of Eleanor Neiss, against Trinity Hospitals. We conclude Trinity Hospitals is immune from suit under the exclusive remedy provisions of workers' compensation law, and we direct the district court to dismiss Phillips' action.

I

[¶ 2] Phillips brought a wrongful death action against Trinity Hospitals, alleging Neiss was employed by Trinity Health, a North Dakota non-profit corporation, and was walking in a service tunnel that was owned by Trinity Hospitals and that connected Trinity Hospital St. Joseph's with the Health Center Medical Arts building in Minot when she fell and hit her head, resulting in serious injuries that led to her

death. The accident occurred while other Trinity Health employees were stripping and waxing the floor of the service tunnel. At the time of the accident, Neiss had been assigned to clean the second floor of the Medical Arts building and was using the service tunnel to return to the Medical Arts building from a cafeteria in Trinity Hospital St. Joseph's. A "skywalk and service tunnel access and utilities easements agreement" provided that Trinity Hospitals was responsible for the maintenance and upkeep of the service tunnel. Phillips alleged Trinity Hospitals was negligent in "failing to keep the service tunnel in good working order and condition, failing to make necessary repairs, failing to properly maintain, failing to prevent leakage and seepage into the service tunnel, failing to maintain a dry walking/working surface for employees of Trinity Health or others using the tunnel, failing to warn, failing to take reasonable precautions to prevent people from being injured/ killed, and/or otherwise failing to take appropriate safety precautions."

[¶ 3] Trinity Hospitals answered and moved for summary judgment, asserting Neiss' surviving spouse had received Workforce Safety and Insurance ("WSI") benefits through Trinity Health and Phillips was barred from suing Trinity Hospitals under the exclusive remedy provisions of workers' compensation law because Trinity Health and Trinity Hospitals were the same entity. Trinity Hospitals claimed it is part of Trinity Health, an integrated healthcare system consisting of four nonprofit corporations, Trinity Hospitals, Trinity Homes, Trinity Kenmare Hospital, and Trinity Health Foundation; Trinity Health is governed by a single board of directors and operated by a single administrative team; Trinity Health controls all operations and facilities of the integrated healthcare system, including the repairs, maintenance, and housekeeping for the

properties of all four of the related nonprofit corporations; although the assets and liabilities of each corporation are tracked separately, all four corporations' financial statements are consolidated in Trinity Health's financial statement; Trinity Health, under its own name and under the name "Trinity Health and Affiliates," is the only entity that files a tax return, which includes the revenues and expenses for all four corporations; Trinity Hospitals has no employees and all employees in the healthcare system are employees of Trinity Health; Trinity Health is responsible for the payroll of all employees within its healthcare system and Trinity Hospitals does not pay wages to anyone; Trinity Health prepares and distributes all W–2 forms to its employees; Trinity Health uses one employee handbook for all employees in its healthcare system; Trinity Health has one Human Resources Department; Trinity Health employees work between and among all the facilities within the healthcare system and an employee's salary generally is allocated to the respective entity according to the time the employee works at each entity; Trinity Health pays the WSI premiums for all the employees in the healthcare system; WSI has determined that Trinity Hospitals is not a separate entity from Trinity Health for purposes of WSI coverage; and Trinity Health's premium payments to WSI covered all employees in the Trinity Health system, including those employees working at Trinity Hospitals.

[¶ 4] The district court denied Trinity Hospitals' motion for summary judgment, concluding Trinity Hospitals was not immune from tort liability under the exclusive remedy provisions of workers' compensation law. The court, relying upon a parent and subsidiary analysis in *Wodogaza v. H & R Terminals, Inc.*, 161 Mich. App. 746, 411 N.W.2d 848 (1987), conclud-

ed Trinity Hospitals was not the same entity as Trinity Health for purposes of the exclusive remedy provisions. The court decided WSI's "assessment of the Trinity Health system [was not] of any import" to the issue and Phillips' action against Trinity Hospitals was not barred by the exclusive remedy provisions of workers' compensation law. The court thereafter denied Trinity Hospitals' motion for reconsideration.

## II

[¶ 5] Trinity Hospitals petitions this Court for a supervisory writ, asking us to direct the district court to vacate its denial of Trinity Hospitals' motion for summary judgment and to dismiss Phillips' action. Trinity Hospitals argues the district court's decision is erroneous because Trinity Hospitals and Trinity Health are the same entity for purposes of the exclusive remedy provisions. Trinity Hospitals seeks a supervisory writ, asserting the district court's decision is not appealable and requires Trinity Hospitals to defend a lawsuit in which it is immune from liability. Trinity Hospitals claims it has no adequate alternative remedy. Phillips responds that Trinity Hospitals' petition for a supervisory writ should be denied because Trinity Hospitals has a right to appeal from any subsequent adverse judgment. Phillips argues Trinity Hospitals is not immune from suit under the exclusive remedy provisions and the district court did not err in denying Trinity Hospitals' motion for summary judgment.

## A

[¶ 6] Our authority to issue supervisory writs originates from N.D. Const. art. VI, § 2, and is a discretionary power that we exercise rarely, cautiously, and not as a matter of right. *Dimond v. State Bd. of Higher Educ.*, 1999 ND 228,

¶ 19, 603 N.W.2d 66. We issue supervisory writs only in extraordinary cases to rectify errors and to prevent injustice when no adequate alternative remedy exists. *Id.*

[¶ 7] In *State v. Haskell*, 2001 ND 14, ¶ 4, 621 N.W.2d 358, we concluded a supervisory writ was appropriate to review a district court's denial of the State's motion to dismiss a State employee's termination action where the employee failed to present a statutorily required notice of claim, because the case was extraordinary, the district court erred, and the State had no adequate alternative remedy for appeal from a nonappealable order denying the motion to dismiss. In *Mitchell v. Sanborn*, 536 N.W.2d 678, 683 (N.D.1995), we concluded a supervisory writ was appropriate because that case embodied important public and private interests in the significance of the exclusive remedy provisions of workers' compensation law and allegations of a co-employee's horseplay, and in the posture of that case, there was certain liability against only the co-employee and a reasonable suggestion that expensive and extensive medical discovery would be necessary before a trial on damages.

[¶ 8] We conclude this case is controlled by *Mitchell* because in this case a similar important public interest in the workers' compensation immunity provisions is present. We further conclude this case is extraordinary and Trinity Hospitals has no adequate alternative remedy because the denial of a motion for summary judgment is not appealable. We therefore hold this is an appropriate case in which to exercise our discretionary authority and invoke our supervisory jurisdiction.

## B

[¶ 9] Trinity Hospitals argues it is the same entity as Trinity Health and is immune from suit under the exclusive reme-

dy provisions of the workers' compensation law in N.D.C.C. tit. 65. Trinity Hospitals claims it is completely controlled by Trinity Health and the two entities are so integrated that neither can be viewed as a separate economic entity. Phillips responds that Neiss' employer, Trinity Health, did not own the service tunnel and was not responsible for its maintenance and that Trinity Hospitals, the corporation that owned the tunnel and was responsible for its maintenance, is a third party responsible for Neiss' death under N.D.C.C. § 65–01–09.

[¶ 10] The district court decided this case in the posture of a denial of a motion for summary judgment, and our analysis is within that context. Summary judgment is a procedural device for promptly resolving a controversy on the merits without a trial if either party is entitled to judgment as a matter of law, and if no dispute exists as to either the material facts or the inferences to be drawn from undisputed facts, or if resolving disputed facts would not alter the result. *ACUITY v. Burd & Smith Constr., Inc.,* 2006 ND 187, ¶ 6, 721 N.W.2d 33. The party moving for summary judgment must show there are no genuine issues of material fact and the case is appropriate for judgment as a matter of law. *Green v. Mid Dakota Clinic,* 2004 ND 12, ¶ 5, 673 N.W.2d 257. A party resisting a motion for summary judgment cannot merely rely on the pleadings or other unsupported conclusory allegations. *Fast v. State,* 2004 ND 111, ¶ 6, 680 N.W.2d 265. A resisting party must present competent admissible evidence by affidavit or other comparable means which raises an issue of material fact. *Beckler v. Bismarck Pub. Sch. Dist.,* 2006 ND 58, ¶ 7, 711 N.W.2d 172. A district court's decision on a motion for summary judgment is a question of law that we review de novo on the record. *See*

*Ernst v. Acuity,* 2005 ND 179, ¶ 7, 704 N.W.2d 869.

[¶ 11] The workers' compensation act, N.D.C.C. tit. 65, is a legislatively created compromise for claims between injured workers and their employers. *Cervantes v. Drayton Foods, L.L.C.* 1998 ND 138, ¶ 6, 582 N.W.2d 2. Under the workers' compensation act, an employee generally gives up the right to sue the employer in exchange for sure and certain benefits for all workplace injuries, regardless of fault. *Id. See* N.D.C.C. § 65–01–01. An "employee" is "a person who performs hazardous employment for another for remuneration," and an "employer" is "a person who engages or received the services of another for remuneration." N.D.C.C. § 65–01–02(16) and (17). Under N.D.C.C. § 65–01–08, injured employees do not have a claim for relief against a "contributing employer or against any agent, servant, or other employee of the employer for damages for personal injuries, but shall look solely to the fund for compensation." Section 65–04–28, N.D.C.C., provides that "[e]mployers who comply with the provisions of [N.D.C.C. ch. 65–04] shall not be liable to respond in damages at common law or by statute for injury to or death of any employee." Under N.D.C.C. § 65–05–06, "[t]he payment of compensation or other benefits by the organization to an injured employee, or to the injured employee's dependents in case death has ensued, are in lieu of any and all claims for relief whatsoever against the employer of the injured or deceased employee." Section 65–01–09, N.D.C.C., provides that "when an injury or death for which compensation is payable under provisions of this title shall have been sustained under circumstances creating in some person other than the organization a legal liability to pay damages in respect thereto, the injured employee, or the employee's dependents

may claim compensation under this title and proceed at law to recover damages against such other person."

[¶ 12] In *Cervantes*, 1998 ND 138, ¶ 1, 582 N.W.2d 2, we construed those exclusive remedy provisions and held an employee of a company providing laborers to another business on a temporary basis was not precluded from suing the other business in tort. We construed the statutory language precluding an employee from suing a "contributing employer" in N.D.C.C. § 65–01–08 and said that language was clear and unambiguous and precluded an injured employee from bringing an action against a "contributing employer." *Cervantes*, at ¶ 9. We concluded a "contributing employer" is the entity who pays the WSI premium to secure workers' compensation coverage for the employee and, in turn, receives immunity from legal liability for injuries to the employee. *Id.* Although the legislature has since amended N.D.C.C. § 65–01–08 to provide that both a client company and staffing service are entitled to immunity when the workers' compensation statutes have been met, *see* 2003 N.D. Sess. Laws ch. 563, § 1, *Cervantes* provides the basic statutory framework for analyzing the parties' claims in this case.

[¶ 13] Here, it is undisputed Trinity Health is a "contributing employer" under workers' compensation law and Phillips has sued a related corporation, Trinity Hospitals, for Neiss' death. In analyzing immunity issues for related corporations, one noted commentator has said "[t]he commonest question arising out of relations between affiliated corporations and their employees is whether an employee of a wholly-owned subsidiary can sue the parent corporation, and whether an employee of the parent can sue the subsidiary." 6 Arthur & Lex K. Larson, *Larson's Workers' Compensation Law*

§ 112.01 (2006). Professor Larson recognizes common ownership, identity of management, and the presence of a common insurer are not enough to create the same identity between a parent and a subsidiary for compensation purposes and the most significant factor for compensation purposes is actual control. *Id.* If the subsidiary is in practice not only completely owned, but completely controlled by the parent, identity may well be found and immunity conferred, and conversely, a showing of absence of control is perhaps the most effective single way to disprove the unity of a parent corporation and a subsidiary. *Id.*

[¶ 14] In denying Trinity Hospitals' motion for summary judgment, the district court relied on the analysis in a Michigan Court of Appeals case, *Wodogaza*, 411 N.W.2d at 848. The Michigan courts have adopted an "economic reality" test for considering issues about the exclusive remedy provisions of workers' compensation laws in the context of parent and subsidiary corporations. *Wells v. Firestone Tire & Rubber Co.*, 421 Mich. 641, 364 N.W.2d 670, 672–73 (1984). Under the economic reality test, a court considers the following factors: (1) control of a worker's duties; (2) payment of wages; (3) the right to hire, fire, and discipline; and (4) the performance of the duties as an integral part of the employer's business toward the accomplishment of a common goal. *Id. See also James v. Commercial Carriers, Inc.*, 230 Mich.App. 533, 583 N.W.2d 913, 915–16 (1998); *Verhaar v. Consumers Power Co.*, 179 Mich.App. 506, 446 N.W.2d 299, 300 (1989); *Wodogaza*, 411 N.W.2d at 850. No one factor is controlling, and the economic reality test " 'looks to the employment situation in relation to the statutory scheme of workers' compensation law with the goal of preserving and securing the rights and privileges of all parties.' " *Wells*, at 673

(quoting *Farrell v. Dearborn Mfg. Co.*, 416 Mich. 267, 330 N.W.2d 397, 400 (1982)).

[¶ 15] In *Wodogaza*, the plaintiff was an employee of the parent corporation, Preston Trucking, and was injured when a forklift he was driving overturned because of actions of a co-worker who was driving a tractor owned by S & P Equipment, a wholly-owned subsidiary of Preston Trucking. 411 N.W.2d at 848–49. The accident occurred on premises owned by H & R Terminals, another wholly-owned subsidiary of Preston Trucking. *Id.* at 849. The injured plaintiff received workers' compensation benefits from Preston Trucking and thereafter sued the two subsidiary corporations, alleging H & R Terminals was negligent in failing to properly maintain its premises and S & P Equipment incurred liability under the owner liability provision of the Michigan Vehicle Code. *Id.* The Michigan Court of Appeals applied the economic reality test and decided the subsidiary corporations were not immune from liability under a Michigan's workers' compensation law that provided the employee's exclusive remedy against the "employer." *Id.*

[¶ 16] The *Wodogaza* court distinguished an earlier Michigan Supreme Court case, *Wells*, in which an employee of a wholly-owned subsidiary corporation, Muskegon Firestone, sued the parent corporation, Firestone. 411 N.W.2d at 851–52. In *Wells*, the plaintiff received workers' compensation benefits through the parent corporation and subsequently sued the same parent corporation. 364 N.W.2d at 671–72. The Michigan Supreme Court recognized the general principle that separate corporate entities would be respected unless doing so would subvert justice or cause a result that would be contrary to some other overriding public policy. *Id.* at 674. The court disregarded the separate corporate entities and held the parent corporation was immune from liability under the exclusive remedy provisions of workers' compensation law, reasoning:

> Our disregard of the separate corporate entities of Firestone and its wholly owned subsidiary is premised upon our recognition of the important public policies underlying the Michigan Worker's Disability Compensation Act and our belief that a contrary determination would be inequitable under the facts of this case. The statutory workers' compensation scheme was enacted for the protection of both employees and employers who work and do business in this state. The system assures covered employees that they will be compensated in the event of employment-related injuries. In addition, employers are assured of the parameters of their liability for such injuries. By agreeing to assume responsibility for all employment-related injuries, employers protect themselves from the possibility of potentially excessive damage awards. In order to effectuate these policies, the statute has been liberally construed to provide broad coverage for injured workers.
>
> If the statute is to be construed liberally when an employee seeks benefits, it should not be construed differently when the employer asserts it as a defense to a tort action brought by the employee who claimed and accepted benefits arising from that employment relationship. There is absolutely no evidence that [Firestone] maintained Muskegon Firestone for the purpose of insulating itself from its workers' compensation liabilities. [Firestone] supplied workers' compensation benefits through its insurance company and accepted responsibility for the work related injuries of its Muskegon employees. Indeed, under the facts and circumstances of this case, we would not have permitted Firestone to shield itself be-

hind its wholly owned subsidiary in order to avoid payment of workers' compensation benefits to plaintiff.

*Wells,* 364 N.W.2d at 674–75 (citations omitted).

[¶ 17] *Wodogaza* distinguished *Wells,* recognizing that although courts generally respect the separateness of corporate entities, the equities in the cases were not the same. 411 N.W.2d at 852. In *Wodogaza,* the parties being sued, the subsidiaries, had not provided workers' compensation coverage for the injured plaintiff and were seeking to shield themselves from tort liability without assuming any liability for payment of workers' compensation benefits, while in *Wells* the party being sued had provided workers' compensation coverage for the inured plaintiff. 411 N.W.2d at 852. A common thread in *Wells* and *Wodogaza* involves whether the entity being sued has provided workers' compensation coverage for the injured plaintiff.

[¶ 18] In *James,* 583 N.W.2d at 916, the Michigan Court of Appeals highlighted that common thread, stating "[a] salient factor in determining an employee-employer relationship in the parent-subsidiary context is the use of a combined worker's compensation insurance policy by both parent and subsidiary." *See also Isom v. Limitorque Corp.,* 193 Mich.App. 518, 484 N.W.2d 716, 717 (1992); *Verhaar,* 446 N.W.2d at 300. In *James,* the plaintiff was an employee of Fleet Carrier, a wholly-owned subsidiary of Ryder System, and alleged he was injured when an employee of Commercial Carriers, another wholly-owned subsidiary of Ryder System, struck him with a truck chassis while loading the chassis onto a delivery truck. 583 N.W.2d at 915. The plaintiff applied for workers' compensation benefits from his employer, Fleet Carrier, and he received benefits from Ryder Automotive Operations, another wholly-owned subsidiary of Ryder System responsible for administering all workers' compensation claims for Ryder System and its subsidiaries. *Id.* The plaintiff sued Commercial Carriers. *Id.* The Michigan Court of Appeals applied the economic reality test and concluded the plaintiff's action against Commercial Carriers was barred by the exclusive remedy provisions of Michigan's workers' compensation law. *Id.* at 918–19. The *James* court distinguished *Wodogaza,* stating Fleet Carrier and Commercial Carriers were not shell corporations and Commercial Carriers had workers' compensation insurance under the same filing as Ryder System and Fleet Carrier, and the workers' compensation claims were all processed through the same wholly-owned subsidiary. *Id.* at 918. The *James* court said in addition to sharing a filing for workers' compensation self-insurer status, the subsidiaries shared numerous financial functions, there was a unity of management between the parent corporation, Ryder, and each of its subsidiaries, and there was a unity of personnel policy. *Id.* The court decided that under the totality of circumstances, Ryder System was the plaintiff's employer for purposes of the exclusive remedy provisions and Commercial Carriers and Fleet Carrier were such integral components of Ryder System that Commercial Carriers was entitled to the benefits of the exclusive remedy provisions. *Id.* at 919.

[¶ 19] We agree with the *James* court that a salient factor in determining an employer-employee relationship is the use of combined workers' compensation premiums for related corporations. That factor is particularly relevant in North Dakota because N.D.C.C. § 65–01–08 specifically precludes an injured employee from bringing an action against a "contributing employer." *See Cervantes,* 1998 ND 138, ¶ 9, 582 N.W.2d 2. Under North Dakota

law, WSI is the entity charged with administering the policies, powers, and duties of N.D.C.C. tit. 65. *See* N.D.C.C. § 65–01–02(22). Here, an unrefuted affidavit of the assistant director to policyholder services at WSI provides:

2.  Trinity Health pays the WSI premiums for all employees in the Trinity Health system.

3.  WSI set up and determined the structure of the premiums and coverage for the employees of Trinity Health; as such, all Trinity corporations fall under one account at Workforce Safety & Insurance for the payment of WSI premiums.

4.  WSI does not consider Trinity Hospitals to be a separate entity from Trinity Health for WSI purposes; the premium payment made by Trinity Health to WSI is intended to cover all employees in the Trinity Health system.

5.  WSI has determined the structure of premiums paid by Trinity Health to encompass employees working at Trinity Hospitals, in addition to all other employees in the Trinity Health integrated healthcare system.

We conclude WSI's determination that "all Trinity corporations fall under one account" at WSI is a prominent factor in this case.

[¶ 20] Moreover, the organizational structure for Trinity Health and its related corporations is not disputed. Although Trinity Health and Trinity Hospitals are separate corporations, Trinity Hospitals is part of Trinity Health, a healthcare system consisting of four non-profit corporations: Trinity Hospitals, Trinity Homes, Trinity Kenmare Hospital, and Trinity Health Foundation. Trinity Health is the sole member of the four non-profit corporations, and Trinity Health and the four non-profit corporations are governed by the same board of directors and by the same officers. All employees in the Trinity healthcare system are employees of Trinity Health, Trinity Health is responsible for the payroll for all employees, and there is one Human Resources Department at Trinity Health. Although a "skywalk and service tunnel access and utilities easements agreement" provided that Trinity Hospitals was responsible for the maintenance and upkeep of the service tunnel, according to Kevin Seehafer, the chief financial officer for Trinity Health and the four non-profit corporations, the director of plant operations and maintenance for Trinity Health was responsible for repairs, maintenance, and housekeeping for the properties of all four of the related non-profit corporations. Phillips has not identified any evidence to contradict the organizational structure for Trinity Health and its related non-profit corporations or the control Trinity Health exercises over those corporations. WSI's determination about the structure of Trinity Health's WSI premiums, coupled with the organizational structure and relationship of Trinity Health and Trinity Hospitals, compels a conclusion that Trinity Health and Trinity Hospitals are the same entities for WSI purposes under both the "control" and the "economic reality" tests.

[¶ 21] On this record, we conclude Trinity Hospitals is the same entity as Trinity Health for WSI purposes and is entitled to the benefits of the exclusive remedy provisions as a "contributing employer" under the plain and unambiguous language of N.D.C.C. § 65–01–08. Holding otherwise would allow WSI to collect a premium for all Trinity Health employees but only provide coverage while those employees were on property owned by Trinity Health and only while those employees were doing the work of Trinity Health.

This conclusion would leave the other four Trinity corporations without employees and without WSI coverage any time Trinity Health employees did work for the four wholly-owned corporations. We therefore conclude Trinity Hospitals is immune from suit under the exclusive remedy provisions of our workers' compensation law and Trinity Hospitals' motion for summary judgment should have been granted.

### III

[¶ 22] We exercise our supervisory jurisdiction and direct the district court to vacate its order denying Trinity Hospitals' motion for summary judgment and to dismiss Phillips' action.

[¶ 23] GERALD W. VANDE WALLE, C.J., and NORMAN J. BACKES and WILLIAM F. HODNY, S.J., and DALE V. SANDSTROM, J., concur.

[¶ 24] The Honorable WILLIAM F. HODNY, S.J., and the Honorable NORMAN J. BACKES, S.J., sitting in place of KAPSNER, J., and MARING, J., disqualified.