2009 ND 89

Alfred KAPPENMAN and Julie Ness, aka Julie Kappenman, on behalf of their minor son, Brason Kappenman, deceased, and Alfred Kappenman and Julie Kappenman on behalf of the heirs and next-of-kin of Brason Kappenman, deceased, Plaintiffs and Appellants

v.

Brent KLIPFEL, and Albion Township, a political subdivision of the State of North Dakota, Defendants and Appellees.

No. 20080184.

Supreme Court of North Dakota.

May 26, 2009.

David R. Bliss, Larson Latham Bliss Huettl, LLP, Bismarck, N.D., for plaintiffs and appellants.

Carlton J. Hunke (argued) and Robert B. Stock (on brief), Vogel Law Firm, Fargo, N.D., for defendant and appellee Brent Klipfel.

Randall J. Bakke, Smith Bakke Porsborg & Schweigert, Bismarck, N.D., for defendant and appellee Albion Township.

MARING, Justice.

[¶ 1] Alfred Kappenman and Julie Ness, on behalf of their deceased son, Brason Kappenman, appeal from judgments dismissing their wrongful death action against Brent Klipfel and Albion Township. We conclude the district court erred in granting summary judgment dismissing Albion Township from the action, but did not err in dismissing Klipfel from the action. We affirm in part, reverse in part, and remand for further proceedings.

I

[¶ 2] On August 1, 2006, Brason Kappenman was killed when the all terrain vehicle ("ATV") he was driving dropped into a washout which had formed a trench across a section line in Albion Township in Dickey County. Brason Kappenman, who was 13 years-old at the time, had been mowing hay on one of his father's fields by himself after Alfred Kappenman had to leave the farm for an appointment in Aberdeen, South Dakota. Brason Kappenman told his father "[h]e wanted to go look around to see where to put a deer stand," and Alfred Kappenman told him, " '[i]f things break down ... just go and do that.' "

[¶ 3] Brason Kappenman worked that afternoon in a field located about two miles

directly north of the Kappenman farmstead, which is 12 miles northwest of Ellendale. The tractor quit running while Brason Kappenman was mowing hay so he left on the ATV he had driven to the field to go back to the farmstead and began looking for a spot to place a deer stand. Brason Kappenman ultimately drove on the section line and into the trench. The trench is located two and one-half miles west and one mile north of the farmstead, and the trench was surrounded by tall grass and small rocks. The trench was four and one-half feet wide, three feet deep, and between fifteen and eighteen feet long. According to Alfred Kappenman, he noticed skid marks leading to the trench indicating Brason Kappenman had attempted to turn away from the trench. The Dickey County Sheriff's Office incident report noted the washout "was hard to see until you were right on it." After the accident, Albion Township placed a "road closed" sign on the section line.

[¶ 4] Brent Klipfel owns the land on both sides of the section line where the accident occurred. Klipfel said the section line is used by farmers to access their farmland, and he has noticed up to "seven to ten" vehicles on the road per day during hunting season. The sections of land have natural waterways that meander and cross the scene of the accident. Klipfel cleaned the waterways in 2004 or 2005 when they silted up with tillage. The severity of the trenches varies from year to year depending on the weather. According to Klipfel, in April 2006 he informed a member of the three-member Albion Township Board, Mark Bobbe, that the entire one mile-long section line was "getting bad." Bobbe denied the conversation took place. Klipfel also said he told board member Virgil Dewald in June 2005 "that he needs to go down and take a look at this washout where Brason had his accident, and he said that he didn't have time that day, and that

he would get at it." Dewald acknowledged the conversation took place and said he told Alfred Kappenman that "I would put it on the FEMA site and that we would inspect it," but admitted that "I didn't get to it." Dewald said that the township maintains its gravel roads, but does not maintain section line roads.

[¶ 5] In June 2007, Alfred Kappenman and Julie Ness brought this wrongful death action against Klipfel and Albion Township. They alleged Klipfel negligently maintained the portion of the section line where the accident occurred; Klipfel and Albion Township had a duty to abate or make the section line safe and knew or should have known of the existence of the trench and warned against the hazard; and the trench constituted a public nuisance entitling them to maintain a civil action against Klipfel and Albion Township under N.D.C.C. § 42–01–07(4). Klipfel and Albion Township moved for summary judgment and the district court granted the motions. The court concluded that Albion Township did not have a duty to repair the section line and the claims against it were barred by the discretionary immunity doctrine. The court also concluded the claims against Klipfel and Albion Township were barred by the recreational use immunity statutes and the washout in the section line did not constitute a public nuisance.

## II

[¶ 6] Kappenman and Ness contend the district court erred in granting summary judgment dismissing their wrongful death action.

[¶ 7] The principles governing summary judgment are well-established:

Summary judgment under N.D.R.Civ.P. 56(c) is a procedural device for the prompt and expeditious disposi-

tion of any action without a trial "if either litigant is entitled to judgment as a matter of law and if no dispute exists as to either the material facts or the inferences to be drawn from undisputed facts, or if resolving factual disputes will not alter the result." *Duemeland v. Norback*, 2003 ND 1, ¶ 8, 655 N.W.2d 76 (citing *Wahl v. Country Mut. Ins. Co.*, 2002 ND 42, ¶ 6, 640 N.W.2d 689). Whether the district court properly granted a summary judgment motion "is a question of law that we review de novo on the record." *Trinity Hosps. v. Mattson*, 2006 ND 231, ¶ 10, 723 N.W.2d 684.

"The party moving for summary judgment must show ... no genuine issues of material fact [exist] and the case is appropriate for judgment as a matter of law." *Id.* "In determining whether summary judgment was appropriately granted, we ... view the evidence in the light most favorable to the party opposing the motion," giving that party "the benefit of all favorable inferences which can reasonably be drawn from the record." *Hasper v. Center Mut. Ins. Co.*, 2006 ND 220, ¶ 5, 723 N.W.2d 409. However, "[u]nder N.D.R.Civ.P. 56, if the movant meets its initial burden of showing the absence of a genuine issue of material fact, the party opposing the motion may not rest on mere allegations or denials in the pleadings, but must present competent admissible evidence by affidavit or other comparable means to show the existence of a genuine issue of material fact." *Riemers v. Grand Forks Herald*, 2004 ND 192, ¶ 4, 688 N.W.2d 167.

*Alerus Fin., N.A. v. Western State Bank*, 2008 ND 104, ¶¶ 16–17, 750 N.W.2d 412.

A

[¶ 8] Kappenman and Ness argue the district court erred in ruling Albion Township had no duty to repair the section line. They contend that if Albion Township did not have a duty to repair, it at least had a duty to warn travelers of a known hazardous condition on the section line.

[¶ 9] If no duty exists on the part of an alleged tortfeasor, there is no actionable negligence. *Ficek v. Morken*, 2004 ND 158, ¶ 9, 685 N.W.2d 98. Whether a duty exists is generally a question of law, but if the existence of a duty depends upon the resolution of factual issues, the facts must be resolved by the trier of fact. *Id.*

[¶ 10] "[C]ongressional section lines are considered public roads open for public travel." N.D.C.C. § 24–07–03. Section 24–06–01, N.D.C.C., provides that the "board of township supervisors of any township in the state has general supervision over the roads, highways, and bridges throughout the township." In *DeLair v. LaMoure County*, 326 N.W.2d 55, 61 (N.D. 1982), this Court construed N.D.C.C. § 24–07–03 and its predecessor statutes and held "a public road, as contemplated by NDCC § 24–07–03, does not impose a duty on a county or township to maintain an improved road on the section line. A county or a township does not have a duty to maintain an improved road on each section line, nor do we believe a county or a township can be held legally liable for injuries to persons using a portion of a designated public road which the county or township has not undertaken to improve." *DeLair* involved a motorcycle accident which occurred on a section line within the limits of an incorporated city. *Id.* at 56–57, 60. In limiting the parameters of its decision, the Court carefully noted:

In this instance we must keep in mind that there was a stop sign at the intersection of the county and township roads. There was no pit, structure, excavation or trap which was unusually

hazardous in view of the fact that the intersection was controlled by a stop sign. Each individual driver must take some responsibility for obeying traffic signs, such as stop signs. We are not expressing an opinion as to the factual question of whether or not DeLair stopped at the stop sign; however, we believe that the intersection, controlled as it was by a stop sign, was not a dangerous or unusually hazardous condition to a driver exercising ordinary care and driving within the limits of the law.

*Id.* at 63. *DeLair* did not address allegations of a failure to warn of a known hazardous condition on a section line.

[¶ 11] Although the *DeLair* Court held that a township has no duty to maintain an improved road on each section line, the Court further recognized the principle that "there is a duty to erect barriers or railings along highways and roads to make the way safe from hazardous or dangerous conditions for travelers using ordinary care." 326 N.W.2d at 62. *Cf.* N.D.C.C. § 24–06–31 ("Each overseer of highways having personal knowledge, or on being notified in writing, of any obstruction in the highway or public street in the overseer's district immediately shall remove or cause any such obstruction to be removed."); *State v. Silseth*, 399 N.W.2d 868, 869 (N.D.1987) ("Section lines are often referred to as highways."). Because a township has no duty under the law to maintain an improved road on each section line, we agree that "[a] township does not have a roving duty to inspect every unimproved and un-vacated section line for possible natural and man-made obstructions." *Douville v. Christensen*, 641 N.W.2d 651, 655 (S.D.2002). However, because a township is charged with the general supervision over roads throughout the township, we believe a township board cannot simply ignore hazardous or danger-

ous section line road conditions of which it has knowledge. We therefore conclude that a township board with actual knowledge of an unusually dangerous or unusually hazardous condition on an unimproved section line road has a duty to warn travelers of that condition. An "unusually dangerous" or "unusually hazardous" condition on a section line road is one so peculiarly dangerous there is a substantial risk that a person exercising ordinary care and driving within the limits of the law could not drive on that part of the road safely. *See, e.g., DeLair*, 326 N.W.2d at 63 ("[T]he intersection, controlled as it was by a stop sign, was not a dangerous or unusually hazardous condition to a driver exercising ordinary care and driving within the limits of the law"); *DiFrischia v. New York Cent. R.R. Co.*, 307 F.2d 473, 476 (3rd Cir.1962) ("A crossing is unusually hazardous if there is substantial risk that a driver in the exercise of ordinary care may be unable to avoid collision with a train operated over the crossing in compliance with statutory requirements"); *Cunningham v. Baltimore and Ohio R.R. Co.*, 25 Md.App. 253, 334 A.2d 120, 124 (1975) (crossing is unusually dangerous " 'if the conditions surrounding it were so peculiarly dangerous that a person of ordinary prudence could not use the same with safety unless the defendant employed extraordinary means to give warning of the presence of its train standing across the highway' " (internal citation omitted)); *Allinson v. Missouri–Kansas–Texas R.R. Co.*, 347 S.W.2d 902, 906 (Mo.Ct.App.1961) (crossing is unusually hazardous " '[i]f the motorist is exercising the requisite care for his own safety but the particular circumstances nevertheless create an illusion of safety' " (internal citation omitted)); *see also Missouri, K. & T. Ry. Co. v. Long*, 299 S.W. 854, 855 (Tex.Com.App.1927) ("more than ordinarily dangerous" crossing is "one that is so peculiarly dangerous

that a person of ordinary prudence could not use the same with safety"). Constructive knowledge is insufficient to give rise to the duty. We further believe actual knowledge given to at least one member of the township board is sufficient to impose the duty. *See Pawelk v. Camden Township,* 415 N.W.2d 47, 51 (Minn.Ct.App. 1987) (knowledge of one township board member that employee had been in military obligated township board to provide employee notice and opportunity for hearing under Veterans Preference Act). Indeed, board member Dewald told Klipfel the board would inspect the washout based on the information Klipfel had given him.

[¶ 12] Here, Kappenman and Ness have alleged that Klipfel told two of the board members on different occasions that the section line was in a hazardous or dangerous condition. Although one of the board members denied that the conversation occurred, this allegation is sufficient to raise a genuine issue of material fact whether Albion Township had actual knowledge of an unusually dangerous or unusually hazardous condition on the section line. We conclude the district court erred in ruling Albion Township had no duty under these allegations and in granting summary judgment dismissal on this issue.

### B

[¶ 13] Kappenman and Ness argue the district court erred in dismissing on summary judgment their action against Albion Township on the ground of discretionary immunity.

[¶ 14] In *Kautzman v. McDonald,* 2001 ND 20, ¶ 30, 621 N.W.2d 871, this Court explained discretionary function immunity:

A political subdivision is exempt under N.D.C.C. § 32–12.1–03(3) from liability for an act or omission of its employees who are performing discretionary functions or duties. We engage in a two-part inquiry when determining whether the discretionary function exception applies: (1) whether the conduct at issue is discretionary, involving an element of judgment or choice for the acting employee; and (2) if the act is discretionary, whether that judgment or choice is of the kind the discretionary function exception was designed to shield. *Olson v. City of Garrison,* 539 N.W.2d 663, 666–67 (N.D.1995).

[¶ 15] We further explained in *Peterson v. Traill County,* 1999 ND 197, ¶ 13, 601 N.W.2d 268:

The primary focus of the second part of the test is on the nature of the actions taken and on whether they are susceptible to policy analysis. *Olson,* 539 N.W.2d at 667. We explained in *Olson,* 539 N.W.2d at 667–68 (citations omitted):

The purpose of the discretionary function exception is to "prevent judicial 'second-guessing' of legislative and administrative decisions grounded in social, economic, and political policy through the medium of an action in tort." When properly construed, the exception should shield only governmental action based on public policy considerations. Moreover, public policy considerations, social, economic, or political, must be distinguished from more objective standards based on, for example, scientific, engineering, or technical considerations. The latter are not protected by the discretionary function exception, when the challenged conduct involves nothing more than a "follow the numbers" approach.

[¶ 16] Under N.D.C.C. § 24–06–01, the township has general supervision over the roads throughout the township. We have held that a township board with actual knowledge of an unusually dangerous or

unusually hazardous condition on a section line road has a duty to warn travelers of that condition. Kappenman and Ness have alleged that Albion Township had knowledge of the dangerous washout on the section line because Klipfel had informed two members of the Board on different occasions. Several courts have held that discretionary function immunity does not shield governmental entities from failing to repair or warn against known hazards on roadways under their control because the failure to repair or warn against the dangerous condition does not involve the exercise of social, economic, or political policy. *See, e.g., Cope v. Scott*, 45 F.3d 445, 451–52 (D.C.Cir.1995) (failure to post adequate warning signs about dangerous nature of road surface); *Seyler v. United States*, 832 F.2d 120, 122–23 (9th Cir.1987) (failure to erect speed limit signs on road); *ARA Leisure Servs. v. United States*, 831 F.2d 193, 195–96 (9th Cir.1987) (failure to maintain road in a safe condition); *McClure v. Nampa Highway Dist.*, 102 Idaho 197, 628 P.2d 228, 229 (1981) (failure to post warning signs indicating an impending curve in road); *Ladner v. Stone County*, 938 So.2d 270, 275 (Miss.Ct.App. 2006) (failure to properly maintain and repair bridge and warn of its dangerous condition).

[¶ 17] We agree with the reasoning of these courts. Failing to warn of an unusually dangerous or unusually hazardous condition in a road implicates no social, economic, or political policies. Although Albion Township stresses its "small budget," it acknowledges that "[i]t may not have cost much for the township to dump some gravel or place some flags on the section line at issue." We further note undue emphasis on economic considerations would permit discretionary function immunity to cover all government decision-making because "[b]udgetary constraints underlie virtually all governmental activity." *ARA Leisure Servs.*, 831 F.2d at 196; *see also Cope* 45 F.3d at 449 ("The mere presence of choice—even if that choice involves whether money should be spent—does not trigger the exception.").

[¶ 18] We conclude that discretionary function immunity does not shield Albion Township from liability if it had actual knowledge of an unusually dangerous or unusually hazardous condition of the section line.

## C

[¶ 19] Kappenman and Ness argue the district court erred in ruling Klipfel and Albion Township were shielded from suit by the recreational use immunity statutes, N.D.C.C. ch. 53–08. The court reasoned:

> Brason was riding the ATV home from the field where he was working. On the trip home Brason was looking for a place to put his deer stand for the upcoming hunting season. Alfred and Brason Kappenman had planned on putting up deer stands the following weekend. Had Brason not detoured to look for a spot to place his stand he would have taken a different, more direct route home from the field. His use of the section line was indeed recreational in nature.

[¶ 20] In *Leet v. City of Minot*, 2006 ND 191, ¶ 20, 721 N.W.2d 398, a majority of this Court noted that "[t]he proper analysis in deciding whether to apply the recreational use immunity statutes must include consideration of the location and nature of the injured person's conduct when the injury occurs." Although the district court focused on the nature of the injured person's conduct when the injury occurred, the court did not fully analyze the location of the accident.

[¶ 21] The accident occurred on a section line. Section 24–07–03, N.D.C.C., provides that "[i]n all townships in this state, outside the limits of incorporated cities, and outside platted townsites, additions, or subdivisions . . . , the congressional section lines are considered public roads open for public travel to the width of thirty-three feet [10.06 meters] on each side of the section lines." *See also Small v. Burleigh County*, 225 N.W.2d 295, 300 (N.D.1974) ("We hold that congressional section lines outside the limits of incorporated cities, unless closed by proceedings permitted by statute, are open for public travel without the necessity of any prior action by a board of township supervisors or county commissioners."). Here, the analysis must begin with an interpretation of the recreational use immunity statutes and their applicability to public roads open to public travel. In *State v. Wetzel*, 2008 ND 186, ¶ 4, 756 N.W.2d 775, we said:

> The interpretation of a statute is a question of law. *Baukol Builders, Inc. v. County of Grand Forks*, 2008 ND 116, ¶ 22, 751 N.W.2d 191. This Court's primary objective in interpreting a statute is to ascertain legislative intent. *Id.* Words of a statute are given their plain, ordinary, and commonly understood meaning unless a contrary intention plainly appears. N.D.C.C. § 1–02–02. Statutes are construed as a whole and are harmonized to give meaning to related provisions. N.D.C.C. § 1–02–07. If the language of a statute is clear and unambiguous, "the letter of [the statute] is not to be disregarded under the pretext of pursuing its spirit." N.D.C.C. § 1–02–05. If the language of a statute is ambiguous, however, a court may resort to extrinsic aids to interpret the statute. N.D.C.C. § 1–02–39. Statutes must be construed to avoid absurd and ludicrous results. *County of Stutsman v. State Historical Soc'y*, 371 N.W.2d 321, 325 (N.D.1985).

[¶ 22] North Dakota's recreational use immunity statutes were enacted to encourage landowners to open their land for recreational purposes by giving them immunity from suit under certain circumstances. *See Leet*, 2006 ND 191, ¶ 14, 721 N.W.2d 398; *Olson v. Bismarck Parks & Recreation Dist.*, 2002 ND 61, ¶ 6, 642 N.W.2d 864. Under N.D.C.C. § 53–08–02, "an owner of land owes no duty of care to keep the premises safe for entry or use by others for recreational purposes or to give any warning of a dangerous condition, use, structure, or activity on such premises to persons entering for such purposes." Section 53–08–03, N.D.C.C., further provides:

> Subject to the provisions of section 53–08–05, an owner of land who either directly or indirectly invites or permits without charge any person to use such property for recreational purposes does not thereby:
>
> 1. Extend any assurance that the premises are safe for any purpose;
>
> 2. Confer upon such persons the legal status of an invitee or licensee to whom a duty of care is owed; or
>
> 3. Assume responsibility for or incur liability for any injury to person or property caused by an act or omission of such persons.

"Land" is defined as including "all public and private land, *roads*, water, watercourses, and ways and buildings. . . ." N.D.C.C. § 53–08–01(2) (emphasis added). "Owner" is defined as including "tenant, lessee, occupant, or person in control of the premises." N.D.C.C. § 53–08–01(3). "Recreational purposes" is defined as including "any activity engaged in for the purpose of exercise, relaxation, pleasure, or education." N.D.C.C. § 53–08–01(4). Section 53–08–05(1), N.D.C.C., provides

that the chapter "does not limit in any way any liability that otherwise exists for ... [w]illful and malicious failure to guard or warn against a dangerous condition, use, structure, or activity."

[¶ 23] Although N.D.C.C. § 53-08-01(2) includes public "roads" in the definition of "land," we do not believe the legislature intended to relieve government entities of their duties as supervisors of roads under all circumstances because public roads are primarily opened for purposes of travel, not recreation. Courts in other jurisdictions have refused to apply recreational use immunity statutes to public roads.

[¶ 24] In *Jerz v. Salt Lake County*, 822 P.2d 770, 771 (Utah 1991), the plaintiff was driving and sightseeing on a narrow public road listed on the county road system which led to recreation areas for hunting and camping when his vehicle struck a large rock protruding from the surface of the road causing the vehicle to veer off the road and into a canyon. The trial court granted summary judgment dismissing the complaint because Utah's recreational use immunity act, which included "roads" in the definition of "land," covered the road and the plaintiff was engaged in a recreational activity at the time of the accident. *Id.* at 771. The Utah Supreme Court disagreed that the road was covered under the Act:

> If the purpose of the Act is to be subserved, it would seem that in order for a road to come within the protection of the Act, it should be capable of being closed to public use at any time. This conclusion follows from the Act's purpose, to encourage owners of land to open land (roads) for public recreation use. The County does not contend that it could permanently close the road in Butterfield Canyon to public use without following the statutory procedure for

abandoning public roads generally. *See* Utah Code Ann. § 17-5-38(1). It therefore appears that since it is on the county road system and is maintained by the County, the Butterfield Canyon road is not characteristic of the type of road which was intended to be protected under the Act.

> . . . .

> We need not and do not now determine what type of roads are protected by the immunity granted by the Act to public entities against suits by users of their roads. We only decide that the immunity was not intended by the legislature to extend to roads of the type in Butterfield Canyon. That road is on the county road system, is maintained by the County, and can be used for recreational or nonrecreational purposes, and Jerz was traveling in an on-highway vehicle. Nothing distinguishes this road from hundreds of miles of other public roads in this state except that it is not as improved and it receives only a low level of maintenance.

*Id.* at 771-72, 774.

[¶ 25] In *Seyler v. United States*, 832 F.2d 120, 121 (9th Cir.1987), the trial court granted summary judgment dismissing based on Idaho's recreational use statute an action brought by the plaintiff, who was injured while riding for pleasure on a friend's motorcycle on a road maintained by the Bureau of Indian Affairs. The Ninth Circuit Court of Appeals ruled Idaho's recreational use statute, which also defined "land" as including "roads," did not bar the plaintiff's action:

> We think it is clear that the district court misconstrued and misapplied Idaho's recreational use statute. Seyler's accident occurred on Agency road 11, a two-lane, paved public highway maintained by the Bureau of Indian Affairs. The government's contention, accepted

by the district court, is that the recreational use statute applies on *any* road or highway in Idaho. Such a result is clearly absurd. The Idaho legislature cannot have intended to remove tort protection against road defects from all persons who drive for other than business purposes anywhere in Idaho. To apply the recreational use statute to the ordinary street or highway ignores the purpose of the statute, which is to encourage landowners to open land to the public that would otherwise be closed to it. Moreover, application of the statute is particularly egregious in this case. Idaho's recreational use statute applies on its face only to landowners who "invite[ ] or permit[ ] without charge any person to use [their] property for recreational purposes." Idaho Code § 36–1604(d). The landowner is freed from any duty to warn "persons entering for [recreational] purposes." *Id.* § 1604(c). We do not agree that the government "invited" or "permitted" Seyler to use a public highway on his own reservation. Nor is Seyler, while on his tribe's reservation, in a position at all comparable to that of a "person entering" land of another for recreational or any other purposes.

*Id.* at 122.

[¶ 26] Similarly, in *Smith v. Southern Pacific Transp. Co., Inc.*, 467 So.2d 70, 73 (La.Ct.App.1985), the court refused to apply the recreational use statute to a street in a city park where the plaintiff was injured while driving:

> In the instant case, although City Park is set aside for recreational purposes, the street used by plaintiff is open to the motoring public for purposes other than recreational use. The intent of the above cited statute was to encourage landowners to allow the public to use their property for recreational purposes.

*See, Section 1 of Act, No. 615 of 1975.* The statutes specifically refer to use of the land for recreational purposes. However, where persons are allowed to use the property for purposes not associated with recreational activities, the statutes should not apply.

[¶ 27] In *Miller v. City of Dayton*, 42 Ohio St.3d 113, 537 N.E.2d 1294, 1296–97 (1989), the Ohio Supreme Court, interpreting its recreational use statute, held "[t]he existence of statutory immunity does not depend upon the specific activity pursued by the plaintiff at the time of the plaintiff's injury. Rather, the inquiry should focus on the nature and scope of activity for which the premises are held open to the public." Applying this test, the court in *Vinar v. City of Bexley*, 142 Ohio App.3d 341, 755 N.E.2d 922, 925 (2001), concluded a roadway through a city park that was available to motorists and bicyclists for travel not related to recreational use was not covered by the statute:

> Ohio's recreational user statute is similar to statutes in other jurisdictions in that "the purpose of the statute is ' "to encourage owners of premises suitable for recreational pursuits to open their land to public use without worry about liability." ' " *Marrek v. Cleveland Metroparks Bd. of Commrs.*, (1984), 9 Ohio St.3d 194, 198, 9 OBR 508, 511, 459 N.E.2d 873, 877, quoting *Moss v. Dept. of Natural Resources* (1980), 62 Ohio St.2d 138, 142, 16 O.O.3d 161, 163–164, 404 N.E.2d 742, 745. As previously noted, the property at issue is a roadway, available to the general public for travel by vehicles and bicycles, which happens to be a thoroughfare through a park. Because the roadway is available to the public for nonrecreational travel, we conclude that the statutory immunity provided by R.C. 1533.181 is not afford-

ed to the city under the facts of this case.

*See also Ross v. Strasser,* 116 Ohio App.3d 662, 688 N.E.2d 1120, 1123 n. 1 (1996) ("property may be used for recreational purposes without being transformed into 'recreational premises' "); *Brinkman v. City of Toledo,* 81 Ohio App.3d 429, 611 N.E.2d 380, 383–84 (1992) ("It is not uncommon to find children playing ball in city streets, or to see families strolling the sidewalks of city neighborhoods. However, the essential character of streets is not recreational. Nor are sidewalks held out as essentially recreational despite being commonly used for recreational purposes.").

[¶ 28] Although these cases did not involve an unimproved section line road, we agree with the reasoning of these courts under the circumstances here. Section 24–07–03, N.D.C.C., declares the section line where the accident occurred in this case to be a public road open for public travel. The record does not reflect that the section line has been closed or vacated under the procedures set forth in N.D.C.C. ch. 24–07. The section line is held out for purposes of travel rather than recreation, and is used for both recreational and non-recreational purposes as reflected by the evidence that farmers use the section line to access their farmland. Because the section line is made available to the public for nonrecreational travel, we conclude the recreational use immunity statutes do not apply in this case.

[¶ 29] This conclusion is consistent with our caselaw applying the recreational use immunity statutes. In each case, the injury occurred in a place that was opened for a recreational purpose. *See Olson,* 2002 ND 61, ¶ 2, 642 N.W.2d 864 (sledding on a hill at a golf course); *Fastow v. Burleigh County Water Res. Dist.,* 415 N.W.2d 505, 507 (N.D.1987) (swimming at a dam);

*Stokka v. Cass County Elec. Coop., Inc.,* 373 N.W.2d 911, 915 (N.D.1985) (snowmobiling in a ditch); *but see Umpleby v. United States,* 806 F.2d 812, 813 (8th Cir. 1986) (under North Dakota law, recreational use immunity statutes applied to accident on road owned by United States Army Corps of Engineers). Our interpretation of the recreational use immunity statutes also helps alleviate the constitutional concerns expressed in *Hovland v. City of Grand Forks,* 563 N.W.2d 384, 388 (N.D.1997). To the extent our decision conflicts with the decisions of the Eighth Circuit Court of Appeals interpreting North Dakota's recreational use immunity statutes in *Umpleby* and *Cudworth v. Midcontinent Comm.,* 380 F.3d 375 (8th Cir. 2004), we find those decisions unpersuasive.

[¶ 30] We conclude the district court erred in granting summary judgment dismissing this action on the ground it was barred by the recreational use immunity statutes.

III

[¶ 31] Kappenman and Ness argue the district court erred in dismissing Klipfel from the action because they claim he had a duty to warn travelers of known hazards existing on the section line.

[¶ 32] In *Small,* 225 N.W.2d at 297, this Court said that "[i]n North Dakota the rights of the public to section line highways and to streets are easements only, limited to the right to travel and other rights incident thereto, and the owner of the adjoining land owns the fee title to the property included in the 33 foot easement up to the sect[i]on line." *See also Burleigh County Water Res. Dist. v. Burleigh County,* 510 N.W.2d 624, 628 (N.D.1994) ("A landowner abutting an open section line retains ownership of the property within the easement, subject to the public's

right to travel."). Although the landowner abutting a section line continues to own the land subject to the easement, it is long-settled law that the landowner, in the absence of a statute to the contrary, does not owe to the public a duty to keep the highway or street in a safe condition. 40 Am. Jur.2d *Highways, Streets, and Bridges* § 402 (2008). The Restatement (Second) of Torts § 349 (1965), provides:

§ 349. Dangerous Conditions in Public Highway or Private Right of Way

A possessor of land over which there is a public highway or private right of way is not subject to liability for physical harm caused to travelers upon the highway or persons lawfully using the way by his failure to exercise reasonable care

(a) to maintain the highway or way in safe condition for their use, or

(b) to warn them of dangerous conditions in the way which, although not created by him, are known to him and which they neither know nor are likely to discover.

The "possessor of land over which there is a public highway is subject to liability for physical harm caused to travelers thereon by a failure to exercise reasonable care in creating or maintaining in reasonably safe condition any structure or other artificial condition created or maintained in the highway by him or for his sole benefit subsequent to its dedication." Restatement (Second) of Torts § 350 (1965).

[¶ 33] North Dakota has adopted these principles in N.D.C.C. § 47–01–23, which provides:

A landowner may not be held liable for a claim resulting from the use or condition of a road across the landowner's property unless the landowner is primarily and directly responsible for the construction and maintenance of the road or an affir-mative act of the landowner causes or contributes to the claim.

[¶ 34] In this case, Kappenman and Ness have presented no competent evidence to suggest that Klipfel caused or contributed to the condition of the washout before the accident occurred. We conclude the district court did not err in ruling Klipfel owed no duty as the landowner under these circumstances.

## IV

[¶ 35] Kappenman and Ness argue the district court erred in dismissing their action based on public nuisance. The district court dismissed the nuisance action because it concluded "[n]either the township nor Klipfel did anything that was illegal or omit a duty."

[¶ 36] Nuisance is defined in N.D.C.C. § 42–01–01:

A nuisance consists in unlawfully doing an act or omitting to perform a duty, which act or omission:

1. Annoys, injures, or endangers the comfort, repose, health, or safety of others;

. . . .

3. Unlawfully interferes with, obstructs or tends to obstruct, or renders dangerous for passage, any lake, navigable river, bay, stream, canal, basin, public park, square, street, or highway; or

4. In any way renders other persons insecure in life or in the use of property.

A "public nuisance is one which at the same time affects an entire community or neighborhood or any considerable number of persons, although the extent of the annoyance or damage inflicted upon the individuals may be unequal." N.D.C.C. § 42–01–06. A civil action is a remedy against a public nuisance, *see* N.D.C.C. § 42–01–

07(4), and a "private person may maintain an action for a public nuisance if it is specially injurious to that person or that person's property, but not otherwise." N.D.C.C. § 42–01–08. Whether a nuisance exists is a mixed question of fact and law. *City of Fargo v. Salsman,* 2009 ND 15, ¶ 9, 760 N.W.2d 123.

[¶ 37] Nuisance requires proof of an unlawful act or the failure to perform a duty. N.D.C.C. § 42–01–01. We have held that Klipfel owed no duty as a landowner under these circumstances, and Kappenman and Ness have not alleged that Klipfel engaged in an unlawful act. We therefore conclude that the district court did not err in dismissing the nuisance claim against Klipfel.

[¶ 38] We did rule that a township with actual knowledge of an unusually dangerous condition or unusually hazardous condition on an unimproved section line road has a duty to warn travelers of that condition, and that Kappenman and Ness have raised a genuine issue of material fact whether Albion Township had actual notice. Breach of a duty sounding in tort will give rise to an action based upon nuisance, and proof of a violation of a statutory duty is not necessary. *See Rassier v. Houim,* 488 N.W.2d 635, 637–38 (N.D.1992); *Knoff v. American Crystal Sugar Co.,* 380 N.W.2d 313, 317–18 (N.D. 1986).

[¶ 39] Because we have held a township has a duty to warn if it has actual knowledge of an unusually dangerous or unusually hazardous condition on an unimproved section line road, we conclude the district court erred in dismissing the nuisance action against Albion Township.

## V

[¶ 40] Because of our disposition of this case, it is unnecessary to address the other issues raised. We conclude the district court erred in granting summary judgment dismissing Albion Township from the action, but did not err in dismissing Klipfel from the action. We affirm in part, reverse in part, and remand for further proceedings.

[¶ 41] JAMES M. BEKKEN, D.J., and DALE V. SANDSTROM, J.

DANIEL J. CROTHERS, J., concurs in the result.

[¶ 42] The Honorable JAMES M. BEKKEN, D.J., sitting in place of KAPSNER, J., disqualified.

VANDE WALLE, Chief Justice, concurring.

[¶ 43] I concur in the result reached by Justice Maring, writing for the majority. Regarding the issue of recreational use immunity, there is concededly some tension between the result we reach in this case and our decision in *Leet v. City of Minot,* 2006 ND 191, 721 N.W.2d 398, and between the decision in this case and my dissent, joined by Justice Sandstrom, in *Hovland v. City of Grand Forks,* 1997 ND 95, ¶ 21, 563 N.W.2d 384.

[¶ 44] In *Hovland,* the issue was whether the recreational use statute shielded the City from a claim for damages resulting from the use of a bike path constructed and maintained by the City. The majority opinion in that case held the City was not immune from damages under the statute because, at the time of the injury, the statute did not apply to public lands and to apply it to all public lands used for recreational purposes might cause disparate treatment between those using the public land, the bike trail, for recreational purposes and those using it for non-recreational activities. *Id.* at ¶ 13. After the accident, but prior to our opinion in *Hovland,* the Legislature amended the statute

to clearly indicate that public lands were included in the definition of "land" for purposes of the recreational use statutes in Chapter 53–08, N.D.C.C. *See* 1997 N.D. Sess. Laws ch. 162, § 7, amending subsection 2 of N.D.C.C. § 53–08–01. That same section also amended subsection 4 of § 53–08–01 to define "Recreational purposes" to include "any activity engaged in for the purpose of exercise, relaxation, pleasure, or education." Those definitions govern our decision in this case although they did not guide the majority's decision in *Hovland*, because they were not in effect at the time of the injury.

[¶ 45] Although I remain convinced *Hovland* was wrongly decided for the reasons stated in my dissent in that case, I am persuaded that even though public lands are now governed by the recreational use statute, and a section line is an unimproved "public" road, there is, as the cases cited by the majority opinion in this case indicate, a substantial and unique difference between a road whose purpose is for travel and other facilities whose primary, if not sole purpose, is for recreational use. Establishment and maintenance of public roads for the purpose of allowing the citizens to travel are among the primary responsibilities of national, state and local government. I agree the Legislature did not intend to foreclose a claim for damages by one who is using the public road for recreation or who is traveling on the road to a recreational use. Neither the primary nor incidental purpose of the ordinary public road is for recreation; rather, it is for travel and a person is entitled to travel on the road regardless of the purpose of the journey. If we are wrong in our conclusion, the Legislature presumably will amend the statute to clearly indicate its intent with regard to public roads.

[¶ 46] In *Leet*, we decided the City of Minot was not shielded from liability for the injuries to a worker who was preparing the city auditorium for a Seniors event. We concluded the worker's presence at the auditorium was for employment purposes and not for a "recreational purpose." Under N.D.C.C. § 53–08–02 an owner of land used for recreational purposes is shielded from liability "to persons entering for such purposes" and in *Leet* the worker did not enter the auditorium for recreational purposes. Here the township argues that Kappenman was using the road for recreational purposes; but there is a difference between the ordinary public road and land or a facility either maintained for a recreational use or allowed to be used for recreational purposes. *See Olson v. Bismarck Parks & Recreation Dist.*, 2002 ND 61, ¶ 6, 642 N.W.2d 864 (recognizing recreational use immunity statutes advance the important legislative goal of opening property to the public for recreational use). The ordinary road is not established for recreational use or opened for recreational use. It is a public thoroughfare upon which people travel and the purpose of their travel is immaterial. Our conclusion does not compromise the legislative goal recognized in *Olson*.

[¶ 47] Finally, a road established on a section line as a matter of law under N.D.C.C. § 24–07–03 is not required to be maintained. *DeLair v. LaMoure County*, 326 N.W.2d 55 (N.D.1982). I believe that in determining whether or not a road is in an unusually dangerous or hazardous condition it is significant that such a road which has not been maintained may, in its natural state, already be in a dangerous condition and yet imposes no duty on the township or the county.

[¶ 48] JAMES M. BEKKEN, D.J.